## MALLISON v. THE STATE.

1. In criminal trials the State may challenge, peremptorily, three jurors.
2. Indictment for murder: the jury having retired to consider of their verdict, returned into court, and asked the court whether, on an indictment for murder, they could find the defendant guilty of manslaughter only? The court told the jury, that they were the judges of the law and the facts: that they might find their verdict as they pleased, and that when the verdict should be rendered the court would decide upon its validity: Held, to amount to an *instruction*, and that having been given *orally*, the judgment must, under the provisions of the act of Feb. 13, 1839, (Laws of Mo. session 1838-9, p. 27,) be reversed.
3. The court adhere to their former decision, viz: that on an indictment for murder, the defendant may be convicted of manslaughter.

*Opinion of the Court delivered by McGirk Judge.*

At the May term of the circuit court for St. Charles county, for the year 1839, Mallison was indicted for the murder of one Samuel L. Holmes. The indictment contains two counts for murder in the first degree, as defined by the statute.

Which definition is thus, "Every murder which shall be committed by means of poisons, or by lying in wait, or by any other kind of wilful deliberate, and premeditated killing or which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary, or other felony, shall be deemed murder in the first degree"—R. Code, p. 167.

To this indictment the defendant pleaded not guilty. On the trial of which indictment, the jury returned a verdict of not guilty of murder, but guilty of manslaughter in the second degree, and assessed his punishment to four years imprisonment in the penitentiary.

In the progress of the proceedings the State was allowed a peremptory challenge. This was excepted to by the prisoner. The 2nd point of objection is that the court gave oral instructions to the jury, when, by the statute, it is said, it should have been in writing: and third, the court refused to grant the prisoner a new trial: and 4th, the court refused to arrest the judgment. The 2nd, 3rd and 4th points are, in the arguments of counsel, again sub-divided into several points. I will proceed to examine these four points in the order as stated above, with their sub-divisions as they arise.

The first point to be considered is, did the court err in allowing the State a peremptory challenge. It is well known, that, at common law, the prisoner was allowed a peremptory challenge, to be exercised at his will, pleasure, and even caprice. This was given in tenderness to human life. It is equally well settled, that, by the same law, the crown was not allowed any such challenge, but submitted to the idea that, on questions of this sort, the King and government of England, were elevated above likes, dislikes, whims and caprices regarding any, and all the subjects of the kingdom.— 4th B. 353. 3 Bac. Ab'nt 762. It is not pretended by the State's counsel now, that the common law, as adopted in Missouri, gives the State any claim to the right. But the claim is placed on the 13th section of the jury law. Revised Code of 1836, page 343. The act is entitled: "an act concerning grand and petit jurors." The act provides for the summoning grand and and petit jurors, describes their qualifications and duties in part. Then the 13th sect. declares: "In all civil and criminal trials by jury, either party may challenge, peremptorily, three jurors, and either party may require the officer to return eighteen in the first instance." Then the 14th sect. authorizes the court to have summoned a special jury in civil cases. Messrs. Bates and Coalter admit that the sect. is broad enough, and large enough in its terms, to sustain the claim of the State. But they insist, that the sole object of the act was not to enlarge the powers of the State, but only to provide a mode for obtaining jurors, as a general thing for the use of the court.— They also rely on the R. C. page 489, sect. 3, where criminal

practice is regulated, to sustain their view, which, they say, grants and limits the number of challenges to the defendant, and gives none to the State, and they rely on the 4th sect. as being particularly explanatory of the meaning of the law maker.

MAY TERM
1840.

Mallison
vs.
The State.

This 4th sect. provides, that "there shall be summoned and returned in every criminal cause, a number of qualified jurors, equal to the number of peremptory challenge, and twelve in addition." It is to be observed, that the first part of this act provides for the cases in criminal matter when there shall be jury trials, and who shall be juror. The 3rd sect. provides and declares the number of peremptory challenges the defendant shall have in capital cases, which is twenty. It then points out the number to be allowed in other cases to defendants. The 4th section provides, that there shall be summoned and returned in every criminal cause, a number equal to the number of peremptory challenges, and twelve in addition. This statute makes no provision, nor does it say one word in regard to a peremptory challenge in behalf of the State. It was passed the 21st March 1835. The act respecting jurors was passed March 17th 1835.

It is insisted, that the act of 21st March, which is silent as to challenges in behalf of the State, being the last statute repealed the statute of 17th March, and that the statute of 21st March having taken up the whole question of challenges it is fairly to be supposed it was the intention of the Legislature that the State should have no peremptory challenge.

On this question my opinion is, that the last act does not repeal the first act. There is in it no repealing clause, and both statutes may well stand together. It is a rule of common law construction, that statutes ought to be so construed that all can stand; and that all the statutes, passed at the same session, are to be taken as one statute. There is also another rule, which is, that statutes made in *pari materia* are to be construed together. This rule I adopt in this case. It will then read in the first part thereof, that in all criminal cases, (no matter of what nature great or small,) the pri-

In criminal trials the state may challenge, peremptorily three jurors.

MAY TERM
1840.

Mallison
vs.
The State.

soner, or criminal, as well as the State, shall have a peremptory challenge of three jurors. Then, by the latter part of the statute, the subject is again taken up, and the legislature more fully enlarge the rights of the prisoner criminal in capital and penitentiary cases, in both of which cases, the challenge without cause is extended to twenty; where the imprisonment is for life, not in the penitentiary, the challenge is twelve, in other cases to four. This all will stand with the first part of the statute except that, in cases not enumerated as above, the challenge is increased one; but, still, the challenge to the State is not by any thing in the last act, in any way infringed. I therefore am of opinion that there is no error on this point.

The second point made is, that the court gave oral instructions to the jury, when by law all instructions in criminal cases must be in writing. It is enacted by the act of 13th of February, 1839, sec. 1st, That in no criminal case shall any court give to the jury any charge or instruction on any question of law or fact, except the same be in writing and filed in the cause; and that if any court violate that statute, the party may except, and for such violation the cause or judgment *shall* be reversed at the instance of the aggrieved party. A bill of exceptions taken in this case, shows, that the jury came into court, after having retired to consider of their verdict, and demanded of the court, whether they could, on this indictment for murder, find the defendant guilty of manslaughter only. To which question, the court told the jury, that the court had not yet decided that point; that the court did not know the supreme court had decided the point: they were the judges of the law and the fact; that they might find their verdict as they pleased, and that when the verdict should be rendered, the court would decide on its validity. It also appears that this information was oral. It is now objected that this was error, and against the express words of the statute.

Mr. Geyer for the State, insists, that here is the question propounded by the jury to the court, to wit; On indictment under the laws of the State for murder, if the jury should be of opinion that the defendant is not guilty of the murder, can

Indictment for murder. The jury, having retired to consider of their verdict, returned into court, and asked the court, whether, on an indictment for murder, they could find the defendant guilty of manslaughter only? The court told the jury, that they were the judges of the law and the facts: that they might find their verdict as they plea sed, and that when the verdict should be

they acquit him of the murder, and on the same indictment, if they think him guilty of manslaughter, find him guilty thereof. This question has already been decided by this court in the case of the State vs. Watson, 5th vol. Missouri R. 497. In which it has been decided, that the jury can so find, and that the finding will be binding and lawful. The counsel insist that the court now reconsider the question: First, for the reason that in that case Judge Edwards did not concur, and again, that, perhaps, a second argument and consideration, may produce a different result, stating, that they are not satisfied with the decision, and propose now to show it is wrong. Accordingly, we have reconsidered the case, and all the arguments, and we are still of opinion the decision is right. When the case of Mallison was tried at St. Char'es, the case of the State vs. Watson was decided but not published, but now it is in print. I will now proceed to pay some attention to the reasons and arguments of Messrs. Bates and Coalter, against the finding of the jury, and the opinion in Watson's case. It is first insisted by them, that with regard to crimes and punishments, except in cases where by the common law the punishment would only be fine and imprisonment, Revised Code. 378, the common law of England is not the law of Missouri. They insist that with regard to the definition of murder, larceny, and most other offences, the statute has created and defined the offence, and that, therefore, the common law, in no sense of the subject, can have any force or bearing regarding such offence.

I understand this court to be of opinion, that in all cases where the statute has defined any offence, by describing the facts or acts which shall be criminal, that such facts or acts are criminal, and that with regard to the name given to such facts and acts, such is the name of the offence; and, farther, that the Legislative punishment annexed to the offence is the legal punishment. Also, that in cases where the statutes only provide a punishment for an offence, by a common law name, the common law must be resorted to for the purpose of ascertaining what facts and ingredients constitute the offence, and farther, that all the rules of evidence in criminal

A2

<div style="margin">
MAY TERM 1840.

Mallison vs The State.

The court would decide upon its validity: Held, to am't to an instruction, and that having been given orally, the judgment must, under the provisions of the act of Feb 13, 1839, (Laws of Mo. session 1838–9, p. 27,) be reversed.

The court adhere to their former decision, viz: on an indictment for murder, the defendant may be convicted of manslaughter.
</div>

cases, except where altered by the statute, are law here. It is argued, that because the Legislature have taken up the subject at large in the Rev. Code, respecting crimes and punishments, that *such code is the only law on the subject.* No member of this court agrees to that. If it were so, the conquence would be, that in no case would a court be able to proceed through to final judgment, without having in some matter to take its own discretion, feelings or bias for the rule of decision. This would place the citizens in an unenviable situation. I shall not pursue this subject any farther. The argument is, that Watson's case is wrong, because in that case it is said that at common law homicide is the genus, and murder, manslaughter, &c., are the species. All that is meant by the expression is, that homicide is the general name for the act of killing or taking the life of a human being, without any regard to the malice, wickedness of heart, or innocence of purpose with which the act is done. It is a mistake to suppose the opinion assumes homicide in the abstract, without adjuncts, or qualifying, explaining, or restraining, is murder. Homicide, unexplained by the actor, is murder; no indictments, however, are framed at common law for this by that name, because the common law deems this description too general.

It will be seen, by reference, however, to the statute, R. C. 167–8, that the word *homicide* is used freely and liberally as a generic term. The statute declares when homicide shall be deemed felonious. It declares what shall be the consequences when the same is justifiable or excusable, &c. So much for this objection taken to the opinion. The other objections go to the whole question. I will in a brief manner examine that question.

It is insisted that to indict a person for murder by lying in wait, perpetrated by *shooting with guns or pistols,* or by stabbing with *swords, spears or Spanish knives* which would be murder in the first degree, and then for the jury to find the defendont guilty, under that indictment, for manslaughter in the 3rd degree, which would be where the Captain of a steam boat, or other person having charge of the boiler,

shall from ignorance or gross neglect, or for the purpose of excelling another boat in speed, create, or allow to be created, an undue quantity of steam, so as to burst the boiler whereby any person shall be killed. Such Captain, &c., is guilty of manslaughter in 3rd degree, and to sustain such finding would be both unjust, unfair, and unconstitutional, because such indictment would clearly not give the prisoner any notice of the true nature of the charge against him. It is admitted that in such a case the conviction would be unjust and unlawful, and that a new trial ought to be granted. The view taken of this subject by the State's counsel appears to be the proper one, which is, that in every case of an indictment for murder, the form of the killing must be set forth, and that under that indictment no evidence of any other form of killing ought or could be admitted. The fact and form of killing being proved, the prosecution would have no more to do. Then it would be the business of the defendant to prove and establish as many qualifying circumstances so as to make the *homicide*, manslaughter only in some of the forms of that kind of killing, or justifiable or excusable. If this principle in practice is carried through the statute respecting crimes, it is believed the difficulties will be greatly lessened, still it will be admitted there will remain difficulties, but they must be gotten over as they arise, or provided for by new legislative enactments. I am disposed to pursue this subject no farther, believing that it is often an evil for a court or legislature to attempt too much. It is my opinion then, that there is no error on this point.

With regard to the other questions made and argued in this cause, it does not become necessary to examine them. The question made respecting the affidavits of the jurors could only be useful on the motion for a new trial. As there is on the record reasons already found for reversing the judgment, a new trial is the consequence. As to the question of a new trial on the merits, this court forbears giving any opinion.

This cause is remanded to the circuit court of St. Charles county, to be proceeded in, in conformity to this opinion.