## THE STATE OF KANSAS v. GEORGE POTTER.

1. INFORMATION FOR MURDER; *Certainty of Charge; Sufficiency.* An information for murder in the second degree against three parties, which charges that the three, in pursuit of a common purpose, unlawfully, purposely, and maliciously made the assault, that each was armed with a separate weapon, describing it, that one with his weapon in a cruel and unusual manner wickedly, purposely, and maliciously inflicted several mortal wounds, describing them, of which the deceased died, that the others, at the same time and place, with their weapons

wickedly, purposely, and maliciously encouraged, abetted, assisted and protected him in said acts, and closes with the charge that the three, naming them, "in the manner and by the means aforesaid, unlawfully, feloniously, willfully, wickedly, purposely, and maliciously, and with malice aforethought, did kill and murder," charges upon all the intent to take life sufficiently for the crime of murder in the second degree.

2. INSTRUCTIONS; *Elements of Crime; Different Degrees.* If the court in its instructions gives in general terms the elements of the crime charged, and it is not asked by defendant to enlarge upon and explain further any particular element or feature thereof, no error has been committed in failing to give fuller and more explicit instructions which will justify a reversal. Especially is this true, when the testimony is not preserved, and there is nothing in the record from which it can be inferred that any particular matter called for especial notice and explanation.

3. ———— When the instructions complained of relate to a degree of crime inferior to the principal offense charged in the information, and inferior to that of which the defendant is convicted, they will be deemed not to have prejudiced the defendant, whether erroneous or not.

4. VERDICT; *Refusal to Receive; Province of Jury.* Where the jury returned a verdict finding the defendant guilty, and adding a recommendation that he receive the lowest punishment allowed by law, and the court declined to receive it, and handed them a form of verdict answering to the same degree of the crime as the prior verdict, but without the recommendation, which was duly signed and returned, *held,* that no error has been committed affecting the substantial rights of the defendant.

5. CHARGE TO BE IN WRITING; *Oral Remarks of Trial Judge.* The statute requiring a written charge to the jury in criminal offenses is imperative, and the failure to comply with it is an error compelling a reversal.

6. ———— Where the bill of exceptions simply states that a part of the charge, or some of the instructions, were given orally, without stating the language used, the statute will be held to apply, and the judgment be reversed.

7. ———— It is immaterial whether the oral portion of the charge is given before the jury retire to consider of their verdict, or after they (having once retired) return to ask further instructions; and whether it is a separate instruction, or a mere explanation of a written instruction, it is an error in either case.

8. ———— The mere fact that an oral communication has passed from the court to the jury, is not of itself proof that the statute has been

disregarded. But the court may properly make oral statements to the jury in reference to the form of the verdict, the manner in which the trial has been conducted, the behavior of the jury, or counsel, or parties, or any other oral statement which is not fairly and strictly a direction or instruction upon some question or rule of law involved in or applicable to the trial, or a comment upon the evidence.

9. ———— *Questions by Jurors, and Answers.* Where a juror propounds a question to the court, it may make a direct answer, without reducing the same to writing, provided in so doing it does not make an independent statement of a rule of law. In other words, where the question of the juror is the full statement of the rule, and the answer is no more than an affirmation or denial, such affirmation or denial need not be reduced to writing before it is given.

## Appeal from Atchison District Court.

INFORMATION for murder in the second degree, filed in June 1874, against defendant *George Potter*, and two others. The case of one of his co-defendants, who was convicted on a separate trial, was brought to this court, and is reported in 13 Kas. 414. The defendant here, *George Potter*, was tried at the November Term 1874 of the district court, and convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary of the state for the period of ten years, from which judgment and sentence he appeals to this court. The form and substance of the information are sufficiently stated in the opinion.

*C. F. Cochran*, and *Horton & Waggener*, for appellant:

1. The court should have sustained the motion to quash the information, and should have sustained the objection of the defendant to the introduction of testimony under said information. The information purports to have been drawn under § 7 of the crimes act, which provides, that "Every murder which shall be committed purposely and maliciously, but without deliberation and premeditation, shall be deemed murder in the second degree." The conviction and judgment were under this section. It contains the word "purposely," as qualifying and characterizing the offense of the murder of a human being. We claim that the accused is not charged

in the information at all with having *purposely* murdered or killed Keeley, but only with having purposely aided and abetted Isaac Potter in the infliction of the wounds from which death ensued. It is nowhere charged or pretended to be charged in said information that either of said defendants *purposely* killed or murdered said Keeley, or that defendant herein aided, abetted or counseled Isaac Potter in the murder of Keeley. This is fatal to the information, and the court erred in not sustaining this point when presented. 4 G. Greene, 500; 31 Iowa, 393; 27 Iowa, 402; 8 Ohio St. 306 to 321; 10 Ohio St. 598; 29 Iowa, 118; 20 Mo. 58; Bish. on Stat. Crimes, §§ 471, 472.

2. The court erred in its instructions to the jury inasmuch as it failed and neglected to state to them all matters of law which were necessary for their information in giving their verdict. Crim. Code, § 236. The offense of murder in the second degree was not in any manner explained to the jury, and they had no information from the instructions of the court from which they could form an intelligent idea of what constituted murder in the second degree. Wharton Am. Crim. Law, 7th ed. § 3248; 65 N. C. 288.; 50 Mo. 308.

The court in its general charge attempts to tell the jury what constitutes manslaughter in the first degree, and undertook to copy the language of § 12 of crimes act; but instead of giving the instruction in the words of the section, the court says to the jury, "And which *killing* would be murder at common law." The court undoubtedly misled the jury as to what constituted manslaughter in the first degree under said section, and certainly did not instruct them in what cases killing would be murder at the common law. 2 Minn. 130; 65 N. C. 288. The court should have explained to the jury the several definitions of manslaughter in the second degree, as provided in §§ 16 and 17 of the crimes act, and it was error not to do so. Crim. Code, § 236. The same objection is applicable to the explanation given by the court of manslaughter in the third degree.

The court in its general charge to the jury explains to

them what constitutes, in its judgment, manslaughter in the fourth degree, in the following words:

"Manslaughter in the fourth degree consists of every other kind of killing of a human being, by the act, procurement, or culpable negligence, which would be manslaughter at the common law, and which is not justifiable or excusable, or would not be manslaughter in some other degree, which I have heretofore fully explained to you."

Now we submit that this instruction, standing alone, does not in any manner explain to the jury what constitutes manslaughter in the fourth degree. In order for the jury to have intelligently understood the same, it was necessary for the court to have fully explained to them what would be manslaughter at common law. As this was not done, the jury were left to conjecture in their minds what constituted manslaughter at the common law, which was the exclusive province of the court to explain to them fully and explicitly. Crim. Code, § 236; 8 Ohio St. 835.

3. After the jury had retired to consider their verdict, they returned into court and asked of the court, "whether a party could be an accessary, aider or abettor of another who committed the crime of manslaughter in the second degree." The court thereupon, over the objection of defendant, gave the jury the following instructions: "A person who aids or assists another in the commission of any crime is equally guilty with the person who actually commits the crime, and may be charged, tried, and convicted, the same as the principal, and may be regarded by the jury in every respect as if he were the principal." As an abstract proposition of law, this is not correct. (Crim. Code, § 228.) But the instruction was not an answer in any manner to the question. It was an evasion in terms of the question of the juror, and the only effect it could have had, would be to mislead the minds of the jury in arriving at a proper solution of the question. But in addition to this written instruction, the court stated *orally* to the jury as follows:

"I mean by that, that makes him principal and not accessary. There is no such thing, in my judgment, as accessary,

in this case. *Those acts make* him principal, and *should be regarded by you* as principal, and not accessary. He is either principal or nothing."

This verbal instruction to the jury *assumes* that the evidence in the case made defendant principal in the crime charged, and that the jury *should* regard him as principal. "*Those acts.*" What acts? It was improper and greatly prejudicial to the rights of the defendant, for the court to give any instructions *verbally* to the jury. The criminal code was undoubtedly enacted for the guidance of courts and juries in the trial of persons accused with the commission of crimes: and so particular was the legislature that the rights of the accused should not be frittered away by any improper act or instruction of the court, it wisely provided, in § 236, "The judge must charge the jury in writing, and the charge shall be filed among the papers of the case." This was clearly an instruction or charge of the court, and it was not in writing, and in direct contravention of the provision as laid down in the criminal code, and was calculated to mislead the jury and deprive the defendant of the rights that had been given him by the law. And the court clearly and manifestly deviated from the law to the prejudice of defendant in giving this oral instruction: 8 Kas. 447; 6 Mo. 399; 45 Mo. 64; 1 Colorado, 18, 61; 37 Indiana, 325; 13 Florida, 637; 34 Indiana, 399; 33 Ind. 283; 7 Ind. 187; 31 Texas, 574. If this provision of the law requiring the charge of the court to be in writing and filed among the papers can be disregarded, as it was in this instance, it is useless for persons accused of crime to insist upon any provision of the law as enacted to protect them in their rights.

4. The court erred in not receiving the first verdict of the jury. It was clearly proper for the court to have granted the request of the defendant to receive the verdict as presented into court, and it was error for it to refuse such request. The defendant had a *legal* right to have said verdict read, or to know of its contents, and have the jury polled as the law requires. 6 Kas. 153; 3 Wat. on New Trials, 1404.

After the jury had brought in their first verdict, and without the defendant being permitted to see the same, the court of its own motion, wrote out and handed to the jury a verdict, which they signed and returned. We claim that this was an improper and unauthorized action of the court. He was simply saying to the jury, "In my judgment, the defendant is *guilty* of murder in the second degree, and that the jury should sign the verdict as presented to them and return it into court; but if upon deliberation they conclude otherwise, and find the defendant *not guilty*, they should fill up the blank left by the court before the word *guilty* with the word *not*, and through their foreman return the same into court." (8 Iowa, 525–531.) This was drawing a distinction unfavorable to the rights and interests of the defendant. 1 Kas. 74.

*Aaron S. Everest,* for The State:

1. There was no error in overruling the motion to quash the information. A similar motion to the same information was passed upon by this court in the appeal of Isaac Potter. *The State v. Potter,* 13 Kas. 422.

2. There was no error in the charge. It stated to the jury all matters of law which were necessary for their information, and no substantial rights of the accused were affected, nor was he in any manner prejudiced thereby. It is not necessary nor essential that the court should have delivered a lecture upon criminal law, or to have made its charge a commentary upon the law of homicide. The exception to the charge is too general, being " to each and every part, line, and word thereof." Unless the whole charge is erroneous, or unless the charge in its general scope or meaning is erroneous, such an exception is not available. 9 Kas. 530, 560; 12 Kas. 43; 33 Wis. 137, 185; 31 Wis. 152; 27 Wis. 483.

3. If the instructions given did not possess sufficient clearness, to satisfy the defendant, the attention of the court should have been called, and a more definite charge requested. Although that portion of the charge as to what would constitute manslaughter in the first degree, may be open to some

verbal criticism, when considered apart, and by itself, still, when taken with the rest of the charge, it could not have misled a jury of ordinary intelligence, and did not prejudice the substantial rights of the defendant. And even if the court did not clearly charge what constituted murder at common law, or any other offense less than the one of which a conviction was had, such an omission is not to be presumed injurious to the defendant, who was convicted of murder in the second degree. 6 Kas. 221; 26 Geo. 156.

4. There was no error in answering the question from the foreman of the jury. There is no doubt of the correctness of this proposition of law stated by the court. It has been frequently so held under statutes similar to that of our own. Crim. Code, § 115; 12 Kas. 550; 3 Gilm. 368; 45 Cal. 290; 25 Iowa, 561.

5. The appellant claims that the court below gave an oral instruction to the jury, which we claim is not a fact, the difference being, that what was said by the court was only in response to a question asked by the jury, after they had been once regularly charged and properly instructed. This was no part of a charge, within the meaning of § 236 of the criminal code. And this statute was not intended to include any and every question and answer passing between the court and jury, neither does the statute contemplate any such thing. 18 Iowa, 231; 21 Wis. 217, 225, 238, 243; 25 Wis. 516; 29 Wis. 125; 10 Mo. 487; 30 Ind. 476; 5 Ill. 302–305; 12 Kas. 447; 25 Mich. 380; 19 Cal. 426, 446. The province of a trial court is sufficiently hampered without giving this section any unwarranted construction. This did not and could not have prejudiced any rights of defendant.

6. It was not error for the court to direct the jury to amend their verdict. The first verdict returned was in the opinion of the court informal. It found the defendant guilty of murder in the second degree, as charged in the information filed against him, and contained the further words, to-wit, "And recommend his punishment to be the least amount allowed by law." The court had the un-

doubted right to direct a verdict which is informal to be corrected; or a verdict which contains unnecessary or improper matter, or matter which is surplusage, to order that part of it to be stricken out, and the verdict corrected. There was no demand to have the jury polled, neither was said verdict received; but the court directed that, the verdict returned being informal, the jury should correct the same. It was not the province of the jury to render any but a general verdict as to the guilt or innocence of the accused.

The opinion of the court was delivered by

BREWER, J.: Defendant was convicted in the district court of Atchison county of the crime of murder in the second degree, and sentenced to the penitentiary for a term of ten years. From that conviction and sentence he has appealed to this court. The errors complained of may be grouped into four classes: first, objection to the sufficiency of the information; second, error in the instructions; third, the giving of an oral instruction; fourth, refusing to receive the verdict as prepared by the jury, and preparing a verdict for them to return. With three of these matters we have had little, but with the other, great difficulty in coming to a conclusion.

I. It is objected that the information was insufficient. The information was a joint one against Isaac Potter, Walter Boyle, and the appellant. It charged murder in the second degree. It charged the fatal blow upon Isaac Potter, and that Boyle and the appellant were present, aiding and abetting. A severance was had, and the defendants tried separately. Isaac Potter was convicted of murder in the second degree, and appealed therefrom to this court, which reversed the conviction and remanded the case for a new trial. Subsequent to the conviction of Isaac Potter the appellant was tried. When Isaac Potter's case was brought to this court, (13 Kas. 416, 422,) objection was made to the sufficiency of the information, but it was overruled. The specific objection now made was however not then presented, so that that decision may not be deemed con-

1. Information for murder; certainty, and sufficiency.

clusive now. The claim now made by counsel is, that "the accused is not charged in the information at all with having *purposely* murdered or killed Jacob B. Keeley, but only with having purposely aided and abetted Isaac Potter in the infliction of the wounds from which death ensued." The information, which is perhaps unnecessarily lengthy, charges that the three defendants, in pursuit of a common purpose, "unlawfully, feloniously, willfully, wickedly, *purposely*, and maliciously," made an assault upon the deceased; that each of the defendants, (naming him separately,) was armed with a certain weapon; that Isaac Potter did, with his weapon, "in a cruel and unusual manner willfully, wickedly, *purposely*, and maliciously," strike, beat, bruise and wound the deceased, and thereby gave to him four mortal wounds, (describing them,) of which wounds he died; that this appellant and Walter Boyle, with their weapons, at the same time and place, unlawfully, feloniously, willfully, wickedly, *purposely*, and maliciously encouraged, abetted, assisted, and protected in said acts, and then closes with the charge, "and so the county attorney * * * does say and charge, that the said defendants, (naming each of them,) him the said Jacob B. Keeley, in the manner and by the means aforesaid, unlawfully, feloniously, willfully, wickedly, *purposely*, and maliciously, and with malice aforethought, did kill and murder, contrary," etc. It seems to us, since the decision in the case of *Smith v. The State*, 1 Kas. 365, that there can be little question as to the sufficiency of this information. It charges an assault by all, in pursuit of a common purpose; the killing by Isaac Potter, the presence of the others, aiding and abetting; and finally, the intent upon all. In the Smith case just cited, there was, as here, an omission to charge the intent to take life elsewhere than in the closing clause of the indictment. But the court, disregarding authorities under the old practice, held the indictment good under our code. It seems to us that that decision was correct, and it disposes of this question.

II. The next objection we shall consider is that to the in-

structions. The court gave to the jury a general charge, and then at the instance of the respective parties, several instruc-

<span style="float:left">2. Instructions; elements, and degrees of crime.</span>

tions. The first point made is, that it failed and neglected to state to the jury all matters of law which were necessary for their information in giving their verdict. (Crim. Code, § 236.) And upon this counsel say: "The offense of murder in the second degree was not in any manner explained to the jury, and they had no information from the instructions of the court from which they could form an intelligent idea of what constituted mur- der in the second degree." On examining the charge, we find that the court told the jury that if they found "that the defendant did, in the manner and form, and at the time and place charged in the information, kill the said deceased," then it was their duty to convict of murder in the second degree. And in the first instruction, he charged them that if they found that the defendant, "in connection with Isaac Potter and Walter Boyle, all acting with a common purpose, design, and intent to take the life of the deceased, purposely and maliciously killed the said deceased, without justification therefor, as charged in the information," then they should convict of murder in the second degree. And other instruc- tions, given at the instance of both plaintiff and defendant, enlarged a little upon certain elements of the crime. It does not appear that any instruction asked by the defendant was refused, except one in relation to the presumption of inno- cence, and one in relation to reasonable doubt, which was refused as tendered, but given with a modification. Now it may be laid down as a general rule, that if the court gives in general terms, the elements of the crime, and is not asked by defendant to enlarge upon and explain further any par- ticular element thereof, no error has been committed in fail- ing to give fuller and more specific instructions which will justify an appellate court in a reversal. Especially is this true, when, as in this case, the testimony is not preserved, and nothing from which it can be inferred that any particular element called for especial notice and explanation. Doubt-

less it often happens that in view of the testimony certain matters require especial notice, and rules of law applicable thereto should be given with great fullness and detail, and a failure to do so would be sufficient to justify a reversal. But there is no presumption that this is so, and the fact, if it exists, should be made to appear in the record. Again, it is objected that the court failed to give fully and correctly the law in reference to the several degrees of manslaughter, and other inferior crimes. *Craft v. The State*, 3 Kas. 485. In reference to these crimes it gave, or attempted to give, simply the statutory definition of them. It made some verbal changes from the language of the statute, but none working any substantial change in the meaning. Thus, in the section defining manslaughter in the first degree, is this phrase: "in cases when such killing would be murder at the common law." Instead of this, the court used this expression: "and which killing would be murder at common law." Then again, it omitted, in explanation of this section, any definition of "murder at the common law." Hence counsel contend that the jury were not fully informed as to what constituted manslaughter in the first degree. Substantially the same criticism is passed upon the instructions in reference to some of the other degrees of manslaughter. In reference to these objections, in addition to what was said concerning the first objection to the instructions, the case of *The State v. Dickson*, 6 Kas. 205, may be referred to, in which this court held that, "When the instructions complained of relate to a degree of crime inferior to the principal offense charged in the information, and inferior to that of which the defendant is convicted, they will be deemed not to have prejudiced the defendant, whether erroneous or not." This is decisive upon these points. An instruction asked in reference to reasonable doubt, was modified by adding a fair proper definition of reasonable doubt, and, as modified, given. There was clearly no error in this. Some other objections are raised to the instructions, but none which we deem well founded.

3. Error, without prejudice.

21—15 KAS.

III. It is insisted that the court erred in refusing to receive the verdict returned by the jury, and handing to them the form of a verdict. The verdict as returned was one finding the defendant guilty of murder in the second degree, and with it these words—"and recommend his punishment to be the least amount allowed by law." The court declined to receive the verdict in that form, and handed them one without those words, which was duly signed, and returned. It may be stated that on the form handed to them a blank space was left before the word "guilty," for the insertion of the word "not," and the jury instructed to insert the word "not" if they found the defendand not guilty. But this was unnecessary. The jury had signified the conclusions to which they had arrived when they returned the first verdict, and all that the court did was to see that the verdict was placed in the proper form. We do not think there would have been any impropriety in receiving the first verdict; but technically, and strictly, the jury have nothing to do with the question of *punishment*, but only with that of *guilt;* and they go outside the strict boundary of their duties when they attempt to influence the term of the punishment. The court keeps within the letter of the law when it confines the jury to their separate duties, and commits no error in so doing. Indeed, it may be laid down, that it is the duty of the court to see that the verdict is in due form. And if all that it does, is to change the form, it is simply discharging an unquestioned duty.

*4. Verdict; province of jury.*

IV. This brings us to the last, and by far the most difficult question in the case. The following are the facts in reference to it: After the jury had retired to consider of their verdict, they returned into court, and through their foreman, Dr. Stringfellow, asked of the court the following question: "I ask whether a party could be an accessary, aider, or abettor of another who committed the crime of manslaughter in the second degree?" The court thereupon, over the objection of the defendant, gave the jury the following instructions, to-wit:

*5. Charge to be in writing. Oral remarks.*

"A person who aids or assists another in the commission of any crime is equally guilty with the person who actually commits the crime, and may be charged, tri d, and convicted the same as the principal, and may be regarded by the jury in every respect as if he were the principal."

In addition to this written instruction, the court stated *orally* to the jury as follows:

"I mean by that, that makes him principal and not accessary. There is no such thing, in my judgment, as accessary to this case. *Those acts make* him principal, and *should be regarded by you* as principal, and not accessary. He is either principal, or nothing."

The statute says, "The judge must charge the jury in writing, and the charge shall be filed among the papers of the cause. Gen. Stat. p. 858, Crim. Code, § 236. It is error to omit to do so. *The State v. Huber*, 8 Kas. 447. A glance

Cases cited and explained. at some of the decisions in reference to this matter in other courts may not be uninstructive. In Indiana the statute provides that, "when the argument of the cause is concluded, the court shall give general instructions to the jury, which shall be in writing, and be numbered, and signed by the judge if required by either party." Q. R. S. (G. & H.) p. 198, § 324. Upon this, in *Townsend v. Chapin*, 8 Blackf. 328, it was held error to give written instructions with verbal explanations and illustrations. The same doctrine was affirmed in *Kenworthy v. Williams*, 5 Ind. 375, and in *Laselle v. Wells*, 17 Ind. 33. In *Meredith v. Crawford*, 34 Ind. 399, the court declared that "oral explanations, comments, or modifications," were erroneous. In *R. S. & V. T. Co. v. Conway*, 7 Ind. 187, and in *Feriter v. The State*, 33 Ind. 283, the decision was, that the whole charge must be in writing. In the case of the *Toledo & W. Rld. Co. v. Daniels*, 21 Ind. 256, the trial judge gave this oral introduction to his written instructions: "This is an action brought against defendant to recover the value of the property alleged by the plaintiff to have been killed on said road. It has been intimated by the defendant's counsel that you may disregard the instructions of the court as to the law governing

the case, but we say to you that you cannot do that. The court may err, but it is not the province of the jury to determine whether the law as delivered to them by the court be correct or incorrect. If wrong, the party feeling aggrieved by it has his remedy by appeal to the supreme court." The giving of this oral statement was adjudged error. In *Pate v. Wright*, 30 Ind. 476, it appeared that the trial judge repeated orally a part of one of the instructions, and in reading another remarked that he had not intended to read so far, and then reread the instruction as intended. This was held no error.

In Colorado, it is provided that "the instructions shall be reduced to writing, and may be taken by the jury in their retirement, and returned by them with their verdict." Laws of 1861, p. 282, § 28. In *Dorsett v. Chew*, 1 Col. 18, and *Giles v. The People*, 1 Col. 61, where it appeared from the bills of exception that the court gave oral instructions, and oral explanations of written instructions, both were adjudged error.

In California, the statute reads: "In no case shall any charge or instruction be given to the jury otherwise than in writing, unless by the mutual consent of the parties." In *People v. Demit*, 8 Cal. 423, and *People v. Ah Fooy*, 12 Cal. 345, the judgments were reversed because of the giving of oral instructions. In *People v. Payne*, 8 Cal. 341, an oral modification of a written instruction was held erroneous; and in *People v. Wappner*, 14 Cal. 437, it was decided that an oral instruction was erroneous, whether given in the first instance, or after the jury had once retired to consider of their verdict and returned with a request for further information. In *People v. Bonney*, 19 Cal. 426, in which was an indictment for murder, the jury returned a verdict of "guilty as charged." The court told the jury verbally that the verdict was not in form, but should specify the degree of murder of which they found the defendant guilty, and directed them to retire and designate the degree. Held, no violation of the statute, and no error.

In *Ray v. Wooters*, 19 Ill. 82, under a statute which declared that the court "shall in no case orally explain or qualify" the written instruction, an oral explanation was held ground for reversal. In *O'Hara v. King*, 52 Ill. 303, where the statute forbade instructions "unless such instructions are reduced to writing," (Scales'. Comp. 261,) it appeared that during the argument of counsel the court interrupted, and stated orally, in the presence and hearing of the jury, its opinion as to the law of the case; but this was decided to be outside of the statute, and not erroneous.

In Florida, the statute requires that the charge shall be wholly in writing; that upon refusing an instruction, the court shall write out his own rulings of the law upon the point raised, all of which shall be in writing, and written before the same are delivered, and that all instructions given and refused shall be signed and sealed by the court, and form a part of the record in the cause. In *Dixon v. The State*, 13 Florida, 637, it appeared that after the court had finished its charge, one of the jurors asked whether they must believe all the testimony, or could disbelieve any part of it. The court answered orally, that they could reject, etc.; but this was adjudged within the prohibitions of the statute, and an error sufficient for reversal.

In *Clarke v. The State*, 31 Texas, 574, it was declared that oral instructions, given without the consent of the defendant, were forbidden by the statute, and sufficient for reversal.

In Missouri, it was provided by the act of February, 1839, "That in no criminal case shall the court give to the jury any charge or instruction, on any question of law or fact, except the same be in writing, and filed in the cause;" and that if any court should violate that statute, "the party may except, and for such violation the cause or judgment shall be reversed at the instance of the aggrieved party." Under this statute the case of *Mallison v. The State*, 6 Mo. 399, was decided. There it appeared that a juror asked if, under the indictment, which was for murder, they could convict of manslaughter, and the court replied orally, that it had not decided

that point; that the court did not know that the supreme court had decided the point; that they (the jury) were judges of the law and the fact; that they might find the verdict as they pleased, and when rendered the court would decide on its validity. The judgment was reversed for error in making such oral reply. The statute in force at the time of the decision of *The State v. Cooper*, 45 Mo. 64, provided, "That the court shall not, on the trial of the issue of any indictment, sum up or comment upon the evidence, or charge the jury as to matter of fact, unless requested so to do by the prosecuting attorney, and the defendant, or his counsel. But the court may instruct the jury on any point of law arising in the case, which instruction shall be in writing." In that case, the court, with the consent of the defendant, charged the jury orally upon the law. This was held erroneous, and the judgment was reversed.

In Michigan, the statute reads, "The court shall in no case orally qualify, modify, or in any manner explain the written charge." In *O'Donnell v. Segar*, 25 Mich. 367, it appeared that the court, in explanation of its written instructions, said orally, "that the bringing of a suit for exempt property, or claiming it as exempt, was justified by law, and must be so regarded by the jury as well as by the courts." Commenting upon this, the supreme court say, "that it was the expression of a mere legal truism, which could not and did not modify the effect of any of the charge given, and consequently cannot be treated as error." But where it was stated in the bill of exceptions that the court "otherwise orally explained," without giving the language used, they decided that the statute applied, and reversed the judgment. In *Swartout v. M. A. L. Rld. Co.*, 24 Mich. 407, it was held that the reading of a section of the statute as a part of the charge was no violation of the provision which required that the charge should be in writing and filed with the papers of the case.

In *Hasbrouck v. City of Milwaukee*, 21 Wis. 217, the court prefaced the written instructions with some oral statements,

among which were these: "During the long and fatiguing trial the court may have become impatient at the delay of counsel, and made remarks that may possibly have influenced some juror. I wish it specially understood that nothing I have said was intended to influence unduly the verdict of the jury, and I do not wish any juror to be influenced by it in the least. In submitting this case to you I will not comment at all upon the evidence, leaving you to weigh it all in your own judgment, and bring in your verdict accordingly." This was held no part of the charge, and therefore not in violation of the statute which required that the charge be in writing. In *Millard v. Lyons*, 25 Wis. 516, a juror, after the charge, asked, "whether the plaintiff had the right to use the defendant's divided grain to feed the stock and sheep." The judge answered that he would not have the right by law. This was held no part of the charge, the supreme court saying, that the question might have been answered with the simple word "no," and that it would be nonsense to require the court to write that word and then read it to the jury. In *Grant v. Insurance Co.*, 29 Wis. 125, the court orally stated to the jury that the defendant had offered no proof to sustain the issues he had tendered, and the plaintiff's proof being conclusive, they must find a verdict for the plaintiff. This was held no violation of the statute.

It will be noticed from this review that our statute is not so specific or minute in its restriction upon the action of the court as those of several other states. The language is general, and simply calls for a written charge, and requires it to be filed among the papers. We think the following propositions may fairly be deduced from the authorities, and are a

Conclusions, or deductions. just construction of the effect to be given to our statute: 1st.—The statute requiring a written charge in criminal cases is imperative, and a failure to comply with it is an error compelling reversal. 2d.—Where the bill of exceptions simply states that a part of the charge or some of the instructions were given orally, without stating the language used, the statute will be held to apply, and the

judgment be reversed.   3d.–It is immaterial whether the oral portion of the charge is given before the jury retire to consider of their verdict, or after they, having once retired, return to ask further instructions; and whether it is a separate instruction, or a mere explanation of a written instruction, it is error in either case.   4th.–The mere fact that an oral communication has passed from the court to the jury, is not of itself proof that the statute has been disregarded. But the court may properly make oral statements to the jury in reference to the form of the verdict, the manner in which the trial has been conducted, the behavior of the jury, or counsel, or parties, or any other oral statement which is not fairly and strictly a direction or instruction upon some question or rule of law involved in or applicable to the trial, or a comment upon the evidence.   5th.–Where a juror propounds a question to the court, it may make a direct answer without reducing the same to writing, provided in so doing it does not make an independent statement of a rule of law.   In other words, where the question of the juror is the full statement of the rule, and the answer is no more than an affirmation or denial, such affirmation or denial need not be reduced to writing before it is given.   It may be remarked in reference to these propositions, and especially the last, that the purpose of this statute is to secure to the defendant the exact rulings of the court, in order that he may avail himself of any error in those rulings; that it was not intended to cast any unnecessary burdens upon the court, or to hamper and restrict communications between the court and jury; that it should be so construed as fairly to secure that purpose, and not made a mere weapon of technical error; that in reference to answers to questions, as there is nothing to require the questions to be reduced to writing before they are put, it would seem trifling to compel the answer to be so reduced, when the answer is simply responsive, and depends for its meaning upon the unwritten question.   It seems to us that, tested by this last rule, the oral statement in this case must be held not a violation

*9. Questions by jurors, and answers.*

of the statute, and no ground for reversal. Many words are used, but after all it amounts to no more than a negative reply to the question asked, if a party could be an accessary. The court replies, that "there is no such thing as accessary; the party is principal or nothing." So far as the law is concerned, it was, under the provisions of our statute applicable to this case, correctly given in the written statement made in reply to the question.

In the record, as it was presented to us at the time of the argument and submission, it did not appear that any exception was taken to the giving of this oral reply to the question of the foreman. Subsequently the appellant filed a motion to have the record corrected by the insertion of an exception, and filed in support thereof an affidavit of one of his counsel who was present during the trial, stating that exceptions were duly taken, and giving an explanation of the omission of a statement to that effect from the record brought here, which is a copy of the original bill signed and filed in the district court, and also a copy of a certificate of the district judge made and filed in the district court since the submission here. It would seem from this testimony that, in the bill as prepared by counsel, was a statement that exceptions were taken, and that this statement was subsequently erased; but whether before or after it was signed, does not seem clear. If the erasure was subsequent to the signing, it is a mere clerical mistake, which can be corrected; but if it was erased before, and the bill was signed without any such statement, it makes this an application to amend the bill, and presents a question of more difficulty. Counsel appreciating the difficulty have filed a supplemental brief, contending that if no exceptions were taken, the defendant was still entitled to the benefit of any error in this action of the district court, and this too, we find a question of no easy solution. We do not decide either of these questions, our conclusions being adverse to the appellant upon the action of the court, supposing it duly excepted to.

The judgment will be affirmed.

All the Justices concurring.