No. 32,686

THE STATE OF KANSAS, *Appellee*, v. LEONARD HATHAWAY, *Appellant*.

(56 P. 2d 89)

Opinion filed April 11, 1936.

*J. H. Brady* and *N. E. Snyder*, both of Kansas City, for the appellant.

*Clarence V. Beck*, attorney general, *Theo. F. Varner*, assistant attorney general, *Arthur J. Stanley, Jr.*, county attorney, and *Don C. Little*, assistant county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment of conviction of manslaughter in the first degree.

The state's evidence tended to show that on August 6, 1934, defendant resided in Kansas City. About noon on that day, while defendant was eating his dinner, his wife noticed some boys who were in his back yard helping themselves to his pears. She so informed her husband and took an army revolver from a trunk and laid it on the buffet. Defendant picked up the revolver, walked to the back door, took aim at one of the boys, Goldie Lee, who was stooping to pick up a pear, and as the boy straightened up defendant shot him through the chest. The lad ran out of the yard, crossed a fence, and expired a short distance away. After shooting young Lee, defendant ran out into his back yard, caught another boy and struck him twice, and then pursued a third boy, snapping his pistol at him, until he came to where Goldie Lee was lying on the ground. Defendant aimed his revolver at the dead or dying Lee and snapped it but it did not go off. Later, in a statement to the police, defendant said that he merely used his revolver to scare the boys and that the one shot he fired had been aimed toward the ground.

At the trial defendant's evidence tended to show that for some time prior to this tragedy he had been annoyed by trespassers and burglars and thieves, and that his wife claimed that these crimes had been committed by the same boys who were raiding his pear trees on the occasion of this homicide.

The cause went to the jury about 3 o'clock on a Saturday afternoon. At 5:35 p. m. the same day the foreman advised the court that the jury were "hopelessly locked." Under admonition they were excused until the following Monday morning. At that time the foreman advised the court that the jury desired that some of the testimony be read to them. This was done.

Then the foreman stated that the jury wished to be instructed as to the penalties for the various degrees of murder and manslaughter. Over defendant's objection the trial court orally gave such an instruction and also orally instructed the jury as to the purpose of a criminal trial and the desirability of verdicts. In part the court said:

". . . Now, I want to state this to the jury in this case: The purpose of these trials is to do justice, and to reach conclusions and to determine the

matters that are submitted to you. We are not here just for the purpose of trying cases, but we are here for the purpose of also to dispose of them. And you will understand, of course, that a disagreement in a case of this kind does not help dispose of business. It merely makes it a matter of trial here again at another term and another time. It is important that we have verdicts, not disagreements, if the jury can conscientiously get together on the facts under the instructions. And I want you to go out and make a careful study of this case again. Consider the evidence and these instructions and see if you cannot reach a verdict this time. . . . And this instruction I just have given you, that statement in regard to the penalties, really an instruction, I will have that written down and sent to you."

The jury then retired to consider their verdict, and returned into court about noon reporting that they had reached a verdict. Counsel for defendant objected to its being received on the ground that the jury had been given oral instructions and not in writing, and moved that the jury be discharged.

The court denied the motion; but declined to receive the verdict at that time, and excused the jury until 2 o'clock p. m. Meantime the oral instruction touching the penalties for murder and manslaughter was reduced to writing, and when the jury reconvened it was handed to them. Ten minutes later the jury returned into court and their verdict of guilty of manslaughter in the first degree was then received and approved, and judgment and sentence thereon followed, counsel for defendant raising all the usual objections thereto.

Among the errors urged by defendant, the one of particular gravity relates to the oral instruction, belatedly reduced to writing, which expounded the respective penalties attaching to the two degrees of murder and to the four degress of manslaughter. It is an express mandate of the criminal code that the court's instructions to the jury shall be in writing. (R. S. 62-1447.) The code also requires that these written instructions shall be read to the jury prior to the arguments of counsel. (R. S. 62-1438.) The importance of conforming to these provisions of the criminal code has been repeatedly emphasized by this court. (*State v. Potter*, 15 Kan. 302; *State v. Stoffel*, 48 Kan. 364, 29 Pac. 685.) In *State v. Huber*, 8 Kan. 447, which was a homicide case, the pertinent section of the syllabus reads:

"Section 236 of the criminal code provides that the court 'must charge the jury in writing,' and it is error to omit to do so in any criminal case." (Syl. ¶ 3.)

In *State v. Bennington*, 44 Kan. 583, 25 Pac. 91, which was a

case of grand larceny, the trial court gave some instructions in writing and some of them orally, the latter being taken down by a stenographer and afterwards reduced to writing and delivered to the jury. This court held that this plain breach of the pertinent statute necessitated a reversal of the judgment of conviction. The syllabus reads:

"It is error for a trial judge to give a portion of his instructions to the jury orally, though they are taken down by the stenographer at the time, and afterward copied and delivered to the jury, on retiring, with the other instructions."

The cases we have just cited are old. It does not appear that any breach of the statutory mandate to give the jury timely instructions in writing has required the attention of this court in recent years. The attitude of the court is not so intolerant of lapses from correct procedure as it was a generation ago. In *State v. Sanders,* 127 Kan. 481, 485, 274 Pac. 223, it was said:

"The legislative mandate concerning technicalities in criminal appeals (R. S. 62-1718) is accorded much greater respect nowadays."

But can we say that the giving of this oral instruction was merely a technical error? The later reduction of the oral instruction to writing and giving it to the jury was an idle gesture which served no purpose. Following the oral instruction the jury reached their verdict, but the court declined to receive it until the belated instruction had been given to them in writing. When that was done the verdict, already reached, was received and approved.

But the substance of the instruction itself was objectionable. This court has repeatedly held that the statutory penalty for crime is no concern of the jury. (*State v. O'Keefe,* 125 Kan. 142, 263 Pac. 1053; *State v. Reuter,* 126 Kan. 565, 566, 268 Pac. 845; *Levell v. Simpson,* 142 Kan. 892, 52 P. 2d 372.) In this case the record is open to an inference, if it does not conclusively show it, that the irrelevant instruction touching the various penalties for the different degrees of homicide served the purpose of permitting the jury to dicker on their verdict, not on the innocence or guilt of defendant, but taking into consideration the penalties, the jury reached a verdict when they had been "hopelessly locked" until that oral instruction respecting the penalties had been given.

It should also be kept in mind that counsel for the state and for defendant were entitled to argue the case to the jury after all pertinent instructions had been given. If this instruction had been

germane to the offense charged and to the evidence adduced, counsel should have had an opportunity to argue its relevancy to the case. And yet it would have been rather absurd to have permitted further arguments on Monday following the giving of the criticized instruction on penalties, when the case had already been submitted to the jury on Saturday and when the jury had already deliberated on it for two and a half hours that afternoon.

Reluctant as this court is to disturb the result in this case, we find it impossible to set down anything in an opinion which would justify a decision that the giving of this instruction complained of, either in form, time, or substance, was not erroneous and prejudicial. To gloss it over under the terms "mere technical error" would open the door to further irregularities of similar character. This court feels constrained to hold that it constituted reversible error.

Touching the court's observations as to the desirability of verdicts and the avoidance of disagreements, this court finds nothing therein which was either coercive or prejudicial. However, it is proper to say that such general observations touching the duty and responsibility of jurors, in our system of administrative justice, would better be given when the venire is first convened. In such circumstances the court's instructive admonitions would pertinently apply to all cases on which the assembled jurors would serve during the term. Such is a familiar practice in the federal courts. The wisdom of such a lecture on jurors' duties given in the middle of their deliberations in a particular case is not so clear.

Error is also assigned on the giving of an instruction in which the jury were told that every person is presumed to intend to do what he voluntarily does and to intend all the natural and probable results of his voluntary acts. The instruction is a commonplace one in criminal trials, and quite correct in its statement of the pertinent law. The present objection to it is that since defendant had testified that he did not intend to shoot the boy but only to scare the lads it should not have been given—that once evidence on the point was introduced, the presumption of intention was eliminated. This objection is hypercritical and disapproved.

The judgment is reversed and the case remanded for a new trial.

HARVEY, J. (dissenting): Appellant did not abstract the evidence. At the oral argument his counsel advised us that the evidence was sufficient, if believed by the jury, to sustain the verdict. The evi-

dence abstracted by the state, fairly summarized in the opinion, confirms this view; indeed, it appears sufficient to have sustained a verdict for second degree murder. In this situation we may repeat as applicable a statement from the opinion in *State v. Bowman*, 106 Kan. 430, 431, 188 Pac. 242: "What we are accustomed to call 'the merits of the case' are not involved."

Careful counsel for appellant, watching every step in the progress of the trial, as was their right and duty, point out several things not in full harmony with the law and procedure as established in this state, and which they contend require the granting of a new trial. Two of these contentions require special consideration: (1) The court in an instruction told the jury the punishment provided by law for the several degrees of murder and manslaughter, and (2) the instruction was given orally.

Taking up these questions: Is it error, requiring reversal, for a trial court, in its instructions in a criminal case, to tell the jury what punishment the law prescribes for the offense charged? This court has never so held. In the only decision of the court bearing directly on the point (*State v. Bowser*, 124 Kan. 556, 561, 261 Pac. 846) the giving of such an instruction was held not to be prejudicial. In several cases the court has had occasion to say the jury has nothing to do with the punishment in a criminal case; this is a matter for the court to rule upon—or words to that effect. (*State v. Cook*, 17 Kan. 392, 396; *State v. Bell*, 107 Kan. 707, 714, 193 Pac. 373; *State v. O'Keefe*, 125 Kan. 142, 263 Pac. 1052; *State v. Reuter*, 126 Kan. 565, 566, 268 Pac. 845; *State v. Woodman*, 127 Kan. 166, 172, 272 Pac. 132; *Levell v. Simpson*, 142 Kan. 892, 896, 52 P. 2d 372 (appeal dismissed, 58 S. Ct. 503, 80 Law Ed. 485.)

In none of these had the trial court told the jury in its instructions the punishment prescribed by law for the offense charged. Some of them have to do with the increased punishment imposed under the habitual criminal act. (R. S. 1933 Supp. 21-107a.) These cases do no more than announce the rule, with which I fully concur, that in the division of duties and responsibilities between the court and the jury in the trial of a criminal case it is the function and duty of the jury to pass upon the facts shown by the evidence and to determine whether such evidence shows the defendant to be guilty or innocent of the crime charged, while it is the function and duty of the court to determine all questions of law which arise in the progress of the case, to approve or disapprove a verdict of guilty returned by the jury, and if it be approved, to determine what pun-

ishment under the law should be imposed, and to render a judgment in accordance therewith. For some offenses the court is authorized to grant paroles; for others it is not. For some offenses the court, within prescribed limits, must fix the specific punishment; for others the statutes fix the extent of the punishment without power of the court to change. If defendant previously had been convicted of a felony, that fact, when established, must be taken into account by the court in adjudging the punishment. All these matters respecting the punishment are for the court to determine and adjudge—they are not to be determined by the jury, or, to use the language of some of the opinions, *supra,* "the jury has nothing to do with the punishment." However, the punishment adjudged by the court must be not only authorized by the law, but it is founded on the verdict of the jury. The verdict is the basis from which the court starts to examine the law to determine the punishment to be adjudged. The fact that jurors happen to know, or had been told by the attorneys or by the court at sometime in the progress of the case, what punishment would follow their verdict has never been held in this state to vitiate their verdict.

No statute is cited by counsel which specifically prohibits a trial court from telling the jury in its instructions the punishment which the law prescribes for the offense charged; neither is one cited which specifically authorizes that practice. We have a statute (R. S. 62-1405) which disqualifies a juror who "believes the punishment fixed by the law to be too severe for the offense." It is not unusual for the prosecuting attorney, in qualifying jurors, to advise each of them the punishment fixed by law for the offense charged and to ask the juror if he believes the penalty too severe. This practice has been held not to be erroneous. (*State v. Curtis,* 108 Kan. 537, 196 Pac. 445.)

In practice it appears some of our trial courts are careful not to include in their instructions a statement of the punishment for the offense charged; others appear almost uniformly to do so, while, perhaps, others do so in certain classes of cases only. Whether including such a statement constitutes reversible error was raised by this court in but one case cited by counsel (*State v. Bowser,* supra), where the practice was criticized, but held not to be prejudicial. Our own research discloses no other case in which the question was raised. Hence, our opinions, except in the Bowser case, do not treat the question. We have taken a short time at our disposal to examine abstracts in an effort to determine to what extent trial courts instruct as to penalties. In many of the abstracts examined instructions are

not set out, other points in the case being raised by the appeal. In the majority of the abstracts examined, where the instructions are set out, the trial courts did not state in their instructions the penalty for the offense charged. Of the recent cases examined the penalties were stated in the instructions in *State v. Thyer*, 143 Kan. 238, 53 P. 2d 907; *State v. Barbour*, 142 Kan. 200, 46 P. 2d 841; and in *State v. Handler*, 142 Kan. 455, 50 P. 2d 977. Skipping some years, and examining a few abstracts, we found the instructions stated penalties in *State v. Wright*, 112 Kan. 1, 208 Pac. 630, and some years earlier in *State v. McCullough*, 96 Kan. 453, 152 Pac. 766, and *State v. Powers*, 92 Kan. 220, 139 Pac. 1166. This was only a sketchy examination covering three short periods. Perhaps they sufficiently indicate the practice in the last twenty years or more.

The next question to be considered arises from the fact that on a question or a request from the foreman of the jury the court orally stated to the jury the penalties fixed by law for the offense charged and the various degrees thereof and later reduced this statement to writing in the form of an instruction and delivered it to the jury, as stated in the opinion. Appellant contends this was the giving of an oral instruction in violation of our statute (R. S. 62-1447), the pertinent portion of which reads:

"The judge must charge the jury in writing, . . . In charging the jury he must state to them all matters of law which are necessary for their information in giving their verdict. . . ."

All this had been done in this case before the incident now under consideration arose. The jury had been charged by the court in its written instructions, which had been read to the jury before argument in the case, in conformity to R. S. 62-1438. In the charge so given the court had stated all matters of law necessary for the information of the jury in giving its verdict. Appellant makes no contention that the statute had not been complied with fully. Appellant's complaint is that after the court had fully complied with the statute it made an oral statement to the jurors concerning a matter of law not necessary for their information in giving their verdict. The statement of this complaint takes the question for our consideration out of the scope of the matters covered by the statute. (R. S. 62-1447.) The application of the statute arose in *State v. Huber*, 8 Kan. 447, 451, in which the record seemed to disclose "that the court below did not charge the jury in writing." The court held: "Of course the court erred in this respect." In *State v. Potter*, 15 Kan. 302, a homicide case, after the jury had been out to consider their

verdict they returned into court and their foreman asked the following question:

"I ask whether a party could be an accessory, aider, or abettor of another who committed the crime of manslaughter in the second degree."

The court, over defendant's objection, gave the jury the following instruction:

"A person who aids or assists another in the commission of any crime is equally guilty with the person who actually commits the crime, and may be charged, tried, and convicted the same as the principal, and may be regarded by the jury in every respect as if he were the principal."

In addition to this written instruction the court stated orally to the jury:

"I mean by that, that makes him principal, and not accessory. There is no such thing, in my judgment, as accessory in this case. Those acts make him principal, and should be regarded by you as principal, and not accessory. He is either principal or nothing." (p. 306.)

The principal question in the case was whether this oral statement should be held to be a violation of the statute and to require a reversal. The court held it should not. The opinion of the court, by Brewer, J., reviews decisions from other states passing on similar statutes. It was pointed out that in some of the other states the statutes are much more definite as to what is prohibited to be stated orally. For example, the Missouri statute under which *Mallison v. State*, 6 Mo. 399, was decided provided:

"That in no criminal case shall any court give to the jury any charge or instruction on any question of law or fact, except the same be in writing and filed in the cause." (p. 402.)

Other statutes were referred to and the decisions thereunder. It was said:

"It will be noticed from this review that our statute is not so specific or minute in its restriction upon the action of the court as those of several other states. The language is general, and simply calls for a written charge, and requires it to be filed among the papers." (*State v. Potter*, 15 Kan. 302, 319.)

The court then stated five propositions which it concluded may fairly be deduced from the authorities. We summarize these: (1) Where no written charge is given it is error, compelling reversal. (2) Where the record simply states a part of the charge was given orally, without stating what part, the statute will be held to apply and the judgment reversed. (3) It is immaterial whether the oral portion of the charge is given before or after the jury retires.

It is error in either case. (4) The fact that an oral communication has passed from the court to the jury is not itself proof that the statute has been violated, but the court may properly make oral statements as to the form of the verdict, the manner in which the trial has been conducted, the behavior of the jury or counsel or parties, or any other oral statement which is not fairly and strictly a direction or instruction upon the question or rule of law involved in or applicable to the trial, or a comment on the evidence. (5) Where the jury propounds a question the court may make a direct answer without reducing it to writing if, in so doing, it does not make an independent statement or rule of law. The opinion then says:

"It may be remarked . . . that the purpose of this statute is to secure to the defendant the exact rulings of the court, in order that he may avail himself of any error in those rulings; that it was not intended to cast any unnecessary burdens upon the court, or to hamper or restrict communications between the court and jury; that it should be so construed as fairly to secure that purpose, and not made a mere weapon of technical error." (p. 320.)

In *State v. Bennington,* 44 Kan. 583, 25 Pac. 91, while the opinion, written by a commissioner, does not disclose it, the abstract reveals that of the nine instructions given to the jury four of them were given orally, and that these pertained specifically to matters of law necessary for the information of the jury in reaching its verdict. It is obvious the trial court had not seriously attempted to conform to the statute. The opinion, however, lays more stress upon decisions from other states, where the statute had more specific prohibition respecting oral statements by the court, than our statute has, as pointed out in *State v. Potter,* supra.

In *State v. Stoffel,* 48 Kan. 364, 29 Pac. 685, several hours after the case had been submitted, the court sent for the jury and learned that it did not fully understand the law of the case, or the written instructions which had been given. In answer to inquiries, and upon its own motion, the court proceeded "to orally charge the jury at considerable length as to what constitutes felonious intent and the unlawful taking of the property of another, as well as what are the duties of a juror in measuring the value of testimony. Explanations of some portions of the general charge were made, and in some cases the court modified the rules of law originally stated to the jury." Obviously this oral statement related to matters of law necessary for the information of the jury in arriving at a verdict. The court properly held the statute (R. S. 62-1447) had been violated.

In the three decisions above cited reversing the trial courts (*State v. Hubber, State v. Bennington,* and *State v. Stoffel,* supra), the statute was clearly violated. The statement in *State v. Potter,* 15 Kan. 302, of the purpose of the statute is sound and has stood throughout the years. It is not designed to be "made a mere weapon of technical error." It was not held to apply in that case where what was said orally to the jury more nearly pertained to a "matter of law necessary . . . for their information in giving their verdict" than what was stated orally in this case. In later cases, where the appellants sought reversal for violation of this statute, the point was held not to be well taken. (*State v. Chandler,* 31 Kan. 201, 1 Pac. 787; *State v. Hobbs,* 62 Kan. 612, 64 Pac. 73; *State v. Gill,* 63 Kan. 382, 65 Pac. 682; *State v. Borchert,* 68 Kan. 360, 74 Pac. 1108; *State v. Labore,* 80 Kan. 664, 103 Pac. 106; *State v. Keehn,* 85 Kan. 765, 118 Pac. 851; *State v. Evans,* 90 Kan. 795, 136 Pac. 270; *State v. Dunford,* 91 Kan. 898, 139 Pac. 430; *State v. Parks,* 133 Kan. 568, 570, 1 P. 2d 261; *State v. Jones,* 137 Kan. 273, 20 P. 2d 514; *State v. Finney,* 141 Kan. 12, 34, 40 P. 2d 411.)

Some of these had to do with a communication between court and jury concerning punishment to be imposed—fully as objectionable as what was done in this case.

Examining the question from another viewpoint: Let us concede for the purpose of this part of the discussion that the statement orally made by the court to the jury pertained to "matters of law . . . necessary for their information in giving their verdict," within the meaning of R. S. 62-1447, and hence was a violation of that section. This is appellant's contention, and for him it is the most favorable position to state it. Does it follow that the judgment of the trial court should be reversed? Not on the record before us. This shows that so far as the guilt or innocence of defendant, or the "merits of the case," are concerned a just result was reached. No complaint is made of the selection of the jury, that any disqualified person served as a juror, that there was any misconduct of the jury, or of the prosecuting attorney; that any improper evidence was received on the part of the state; that any evidence defendant desired to offer was excluded, or that written instructions were not given the jury covering "all matters of law . . . necessary for their information in giving their verdict." By not abstracting the evidence, and by the statement of his counsel at argument, appellant concedes the evidence sustains the verdict. It seems clear to me

appellant is using R. S. 62-1447 solely as "a weapon of technical error."

In the trial of any important contested case irregularities, even violations of statutes, are likely to occur. Early in our history it was said:

"The whole spirit of civil and criminal codes of practice, alike, is to disregard technicalities and observe the substance only." (*Territory v. Reyburn*, McCahon 134, 1 Kan. [2d ed.] 551, 555.)

We have a statute which reads:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties." (R. S. 62-1718.)

This statute is being given more and more effect as the years go by, and its wisdom is appreciated. When mistakes of procedure, or even of law, occur in the progress of the trial, instead of reversing the judgment of the trial court for that reason alone, we look to see what result, if any, followed. If it did not affect the substantial rights of a party to the action it is ignored. Indeed, the party complaining of the mistake has the burden of showing that it affected him adversely. (See the many cases annotated under this section in our Revised Statutes and Supplement thereto.) Some of these cases show direct violations of statutes of a character practically impossible to show a bad effect (see particularly *State v. Peterson*, 102 Kan. 900, 171 Pac. 1153; *State v. Smith*, 114 Kan. 186, 188, 217 Pac. 307), yet, because of the lack of such a showing the violation was ignored. Here appellant makes no showing that the action of the court of which he complains had any effect on his substantial rights. All he does is to contend the statute has been violated, and asks a reversal because of it. That is not enough.

Two matters of less consequence are mentioned. It is said the court made the oral statement complained of after the jury was "hopelessly locked." On that point the record shows the jury had been out about two and one half hours. The court, closing its business for the day, sent for the jury. The following colloquy between its foreman and the court is shown:

"The Court: Members of the Jury: Have you agreed upon a verdict?

"The Foreman: No, sir; we have not, Judge.

"The Court: Pass up the papers, please.

"The Foreman: We are hopelessly locked.

"The Court: It is rather early to take to being hopeless."

The court then admonished the jury and discharged them for the night. It will be observed the statement was volunteered by the foreman; the court had not asked for it. Anyone familiar with the trial of such cases knows the idea expressed by the foreman had been formed prematurely, and was so regarded. No trial court would place any reliance on such a statement made so soon after the jury had been considering a murder case such a short time. If the jury had been out two and one half days instead of that many hours the statement might have meant something; as it was, it meant nothing. The point is trivial and serves only as something to talk about.

The other matter is the suggestion in the opinion that counsel would have been entitled to argue this oral instruction. It does not appear appellant or his counsel ever thought of this point; for no request to argue it was made at the time, and no complaint has been made, either in the trial court or here, that such argument was refused. More than that, it formed no basis for additional argument. (See *State v. Gill*, supra.)

A just result was reached in the trial of this case; the contrary is not seriously contended. There is no error in the case which affected the substantial rights of appellant. The judgment should be affirmed.