No. 25,613.

THE STATE OF KANSAS, *Appellee,* v. ERNEST SCHOLL, *Appellant.*

SYLLABUS BY THE COURT.

1. RECEIVING STOLEN PROPERTY—*Information—Description of Property.* Defendant was charged in one count of an information with receiving a stolen steer, knowing it had been stolen, and in a second count with receiving the carcass of a steer, knowing the steer, which was described as in the first count, had been stolen. At the trial, theft of the steer was not contested, and defendant's knowledge of the theft was proven. The undisputed evidence was that defendant, who was a butcher in Oakley, went to a corral on a farm where the steer was impounded by the thief, agreed with the thief on a price for the steer, shot it, butchered it in the corral, the thief assisting, and loaded the beef and hide into his automobile and took them to Oakley. Defendant was found guilty on the second count. *Held,* the usual distinction between live animal and food product did not obtain; killing the steer was a mere incident of the transaction at the corral, not affecting identity of the property; the carcass received and the steer stolen mentioned in the verdict were the same subject of possession; and sentence for felony was properly pronounced on the verdict.

2. SAME—*Information—Value of Property—Failure to State Cured by Findings.* The second count of the information did not allege value of the car-

cass, and a motion to quash, assumably on that ground, was denied. From the evidence the jury found the value to be $80. *Held,* defendant suffered no prejudice from denial of the motion, and the finding of value made the record formally sufficient to support sentence for receiving property on which it was necessary to place a value in order that the offense might be of felony grade.

3. CRIMINAL LAW—*Character Evidence—Limiting Number of Witnesses.* The court limited the number of defendant's witnesses to prove his general reputation for obedience to law and for truthfulness to three. The state did not contest defendant's good reputation. *Held,* imposition of the limitation was illiberal, but not, as a matter of law, an abuse of discretion.

4. SAME—*Character Evidence—Instructions.* Criticism of the court's instruction relating to character evidence considered, and *held,* it is not probable that the jury were misled.

5. APPEAL AND ERROR—*Nonprejudicial Error—Improper Conduct of Trial Judge.* The statute forbidding reversal unless substantial rights are materially infringed, applied to improper conduct of the trial judge in going to the door of the jury room several times while the jury were deliberating, and conversing with them several minutes at a time.

Appeal from Logan district court; JACOB C. RUPPENTHAL, judge. Opinion filed June 6, 1925. Affirmed.

*J. H. Jensen,* of Oakley, and *J. A. Fleming,* of Topeka, for the appellant.

*Charles B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, *B. W. Brooke,* county attorney, and *Guy L. Hursh,* of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: Defendant was convicted of receiving property, knowing it had been stolen, and appeals.

Defendant was a butcher in the meat department of the Moore Mercantile Company at Oakley. He purchased beeves from farmers and put the meat on the block for the company for a price per pound. A farmer stole a steer from the Moffett, Andrews & Lewis pasture. The theft was discovered and the farmer was arrested and charged with the crime. He pleaded guilty, was sentenced, and was immediately paroled.

Having in mind the steer in question, the farmer offered to sell to defendant a steer running in a pasture, and defendant expressed willingness to buy it. On the following Saturday the farmer purloined the steer from the Moffett, Andrews & Lewis pasture and placed it in his own corral. On Sunday defendant came for it. There was some haggling about price. Finally, according to de-

The State v. Scholl.

fendant's testimony, the farmer offered to let defendant have the steer for fifty dollars, and defendant accepted the offer. According to the farmer's testimony, defendant offered fifty dollars for the steer, and the farmer said defendant could have it. Defendant shot the steer, butchered it in the corral, with the farmer's assistance, and loaded the beef and hide into his automobile and took them to town. The farmer, as a witness at the trial, told the whole story, and by his and other testimony defendant's guilty knowledge was fully proved.

Without taking note of the distinction between the quick and the dead, which criminal law and procedure require shall be recognized, the complaint and warrant charged defendant with receiving a stolen steer and the carcass thereof. Defendant waived preliminary examination. The information repeated in one count the charge made in the complaint and warrant. Defendant filed a motion to quash, which was sustained. The county attorney then filed an amended information, which charged receiving steer in one count and receiving carcass in a second count. Defendant filed a plea in abatement, on the ground he had never been tendered a preliminary examination on these new and strange charges. True, he had been tendered a preliminary examination on the charge of receiving steer and carcass, but not on the charge of receiving just steer or just carcass. The court sustained a demurrer to this plea and defendant was obliged to go to trial. At the conclusion of the evidence the court instructed the jury that defendant might be convicted, if the proof were sufficient, of receiving steer, or might be convicted of receiving carcass, but he could not be convicted of receiving both. The verdict was that defendant received the carcass of a steer, knowing the steer had been stolen.

Defendant says the thief stole the steer, not the carcass; the thief never had possession of the carcass, and defendant did not receive the carcass from the thief; defendant has been acquitted of receiving the steer, has not been convicted of receiving the carcass, knowing the carcass to have been stolen, and how can he be sent to the penitentiary on a verdict of receiving the carcass knowing the steer to have been stolen?

For obvious reasons, there should be certainty in a charge of receiving stolen property, with respect to identity of the property. The transaction denoted by a charge of receiving a live animal is likely to be quite different from the transaction denoted by a charge

of receiving the food product obtained by slaughter of a live animal, and the first information was properly quashed. At some time, dependent on evidence to be adduced, possession of the body of the steer, living or dead, passed from the farmer to the defendant. Sometimes the evidence in a criminal case takes an unexpected turn, and to meet the exigencies of proof it may have been prudent for the county attorney to add the second count to the amended information.

At the close of the evidence the fact that the steer had been stolen was beyond dispute. So far as acquisition of the property by defendant was concerned, the farmer and defendant agreed in all essential respects on what occurred, both before and after the steer was killed, and the only contested issue was whether defendant knew the property had been stolen. The result is that in this case there was no abysmal difference between live steer and butcher's meat. The transaction between the farmer and defendant, concluded by delivery and receipt of possession, did not embrace two distinct kinds of property. The carcass and the steer mentioned in the verdict were the same subject of possession, and it cannot be maintained that guilt or innocence depended on a difference which destroyed identity, without indulging in sophistry. The gravamen of the offense was receiving stolen property, knowing it had been stolen. Passing of title between the farmer and defendant was not an element of the crime. Possession alone was involved. Whether, under the circumstances, tradition occurred just before or just after defendant shot the steer, was a subject of the same gravity as the difference between tweedledum and tweedledee, and the court should have instructed the jury that, if they found defendant received property knowing it had been stolen, the killing of the animal was a mere incident of the transaction, having no bearing on the essential nature of the offense.

The conclusions just stated bear on another subject pressed upon the court's attention.

Stealing a steer is grand larceny, without regard to value of the animal. Stealing beef is grand or petty larceny, according to whether the property is of the value of $20 or less. Grand larceny is a felony, and petty larceny is a misdemeanor. Receiving stolen property is punishable in the same manner as larceny of the property. The second count of the information did not state the value of the carcass. The jury found the value to be eighty dollars.

There was a motion to quash the information, on the ground it did not describe the property alleged to have been received with sufficient certainty to advise defendant of the nature of the charge against him. The statement of value in an information for larceny or for receiving stolen property is not descriptive of the property, as allegation of kind or class—money or goods; allegation of kind of material—gold or silver; allegation of distinguishing marks or brands, and the like, are descriptive. Likewise, value does not characterize or identify the transaction of stealing or of taking into possession. It merely classifies the crime—a subject which does not become of vital importance until sentence is reached. Since, therefore, the motion to quash was based on defective description, it was properly denied.

Let it be assumed that the motion to quash did relate strictly to disclosure of nature of offense. An information ought to show whether the defendant is charged with felony or misdemeanor, and if in this instance the county attorney was doubtful whether his proof would show property the receiving of which would constitute a felony without regard to value, he should have alleged value in the second count. The evidence, however, made distinction between kinds of property immaterial. Defendant testified that, when disposition of the steer was first mentioned, the farmer wanted fifty-five dollars for it, and represented it would weigh 1,100 or 1,200 pounds. Defendant further testified as follows:

"I went out there Sunday, drove to his place, and bought the steer. When I bought the steer of him, I says, 'Sutton,' I says, 'that steer is not as big as you said he is.' I says, 'That steer has been shrinking,' and I says, 'I couldn't afford to give you that much money for him.' He says, 'How much could you give for him?' I says, 'Forty-five dollars for him.' No, he wouldn't do that. 'Well,' he says, 'I tell you, if you give me fifty dollars for that steer I will sell him to you.' I waited a minute; I says to myself, I am right down here now fifteen to twenty miles from town, and I might as well buy him and butcher him, so we went and butchered the steer."

Defendant also testified that while he was butchering the steer a man drove up to the corral, and the following conversation occurred:

" 'Butchering?' I says, 'Yes, sir.' He says, 'Is that one of your steers, Leslie [the farmer]?' Leslie said, 'Yes.' I says, 'That's a steer I bought from Mr. Sutton [the farmer].' "

The result is, the omission to state value in the second count of the information was not in fact of the slightest consequence to defendant, and the finding of value in the verdict made the record

formally sufficient to support sentence for receiving property on which it was necessary to place a value in order that the offense might be of felony grade. ·

The court limited the number of defendant's witnesses to prove his general reputation for obedience to law and for truthfulness, to three. In the case of *Haag v. Cooley*, 33 Kan. 387, 6 Pac. 585, the court held it was error to limit the number of plaintiff's character witnesses to three. That, however, was a civil action for slander, and injury to plaintiff's reputation was an element of the cause of action. Here good reputation in the community was merely a fact tending to show that defendant would not be likely to bargain for possession of a stolen steer, knowing of the theft, and would not be likely to give false testimony. His witnesses were his employer, L. L. Moore; the pastor of the Methodist church in Oakley; and an old and respected resident of the county—all of whom knew defendant's reputation, and testified it was good. One of the witnesses had heard the cashier of the Oakley bank discuss the subject. Good reputation, therefore, was well established. Defendant did not show that the limitation prevented him from producing other witnesses whose testimony would be more convincing, and the state did not contest the fact that defendant bore a good reputation. While, therefore, the limitation was illiberal, it cannot be said, as a matter of law, that imposing it constituted abuse of discretion.

The court's instruction to the jury respecting character evidence is criticized. The purpose of such evidence was clearly stated, and the jury were told to consider the testimony offered; but the court said they were to consider it to determine whether it added to and strengthened the primary presumption of law in favor of defendant's honesty and truthfulness. While the instruction was not happily phrased, the court's purpose evidently was not to restrict consideration of the testimony, but to make it cumulative to the presumption, and it is not probable that the jury were misled.

At the hearing on the motion for new trial it was shown that while the jury were deliberating the judge of the court went several times to the door of the jury room and conversed with the jury. On one occasion the judge had his head in the door of the jury room for several minutes. From a statement made by the judge in denying the motion, it appears that nothing actually prejudicial occurred, and a majority of the court are inclined to apply the statute forbidding reversal unless substantial rights are materially in-

fringed.   The conduct exhibited was, however, highly improper. Throughout the proceeding in a criminal case the trial judge's place is on the bench.   The jury room is a place of seclusion and privacy for members of the jury while they are deliberating on their verdict. The trial judge has no privilege to invade it, and all his communications with the jury ought to be in open court.

Other assignments of error have been considered and are not regarded as sufficiently cogent to require the granting of a new trial. The judgment of the district court is affirmed.