No. 33,281

THE STATE OF KANSAS, *Appellee*, v. PETE RAFFERTY, *Appellant.*

(67 P. 2d 1111)

Opinion filed May 8, 1937.

*Karl V. Shawver,* of Paola, for the appellant.

*Clarence V. Beck,* attorney general, *C. Glenn Morris,* assistant attorney general, *James W. Wallace,* county attorney, and *L. M. Quantius,* of Lawrence, for the appellee.

The opinion of the court was delivered by

SMITH, J.: In this action the defendant was convicted of a violation of G. S. 1935, 21-531, and appeals.

On June 24, 1935, about 9:30 in the morning two unmasked men robbed the Farmers State Bank, of Blue Mound, Kan., of a large sum of money. The robbery was committed with the aid of firearms. The robbers came to the scene of the crime and fled from it in a Chevrolet automobile. Some distance from Blue Mound they abandoned this car and stole another. They then fled across the state line and after some days the defendant was apprehended in Missouri.

By this time officers had learned that the car in which the robbers had come to Blue Mound had been stolen in Olathe. A woman was found who sat in a truck parked near the courthouse square and watched the man who stole that car get in it and drive away. She identified the defendant as being this man. After defendant was arrested and charged with bank robbery this woman was one of the first witnesses against him. There are a number of trial errors argued, and they will be dealt with in the order in which it is alleged they occurred at the trial.

Mrs. Frances Stutzman was the woman who sat in the truck on the courthouse square and saw some man steal the car. She identified defendant from the witness stand as being that man. On cross-examination she testified in answer to a question asked by counsel for defendant that the summer before the trial a highway patrolman had shown her a picture and she had concluded from an examination of the picture that defendant was the man. On redirect examination the following questions were asked and answers made:

"Q. Did you tell Mr. Devers that this was the man, or did he tell you this was the man? A. I told Mr. Devers I thought this was the man.

"[Attorney for Defendant] I object to that as incompetent, irrelevant and immaterial.

"By the Court: Overruled.

"Q. You told him? A. Yes, sir.

"[Attorney for Defendant] And move to strike out the testimony.

"By the Court: Overruled."

Defendant argues that it was error to admit the above testimony because it was hearsay. It will be noted that counsel did not object to this evidence because it was hearsay but because it was "incompetent, irrelevant and immaterial." Counsel for defendant asked the witness about the picture that the highway patrolman had shown her. Thus it will be seen that the subject of the picture was put into the record by the defendant. The questions asked by counsel for the state on redirect examination only tended to clear up the situation that had been injected into the case by defendant. We have concluded that the admission of this evidence was not error.

The next witness called by the state was the cashier of the bank. He was in the bank the morning it was robbed. He identified defendant as one of the men who held a gun on him. On cross-examination he was asked about a picture of defendant he had seen in a newspaper. On redirect examination the following questions were asked and answers made:

"Q. Mr. Shawver has asked you about a picture in the newspaper, did you see this man's picture in the newspaper? A. I did.

. . . . . . . . . . . . . . .

"Q. After you had seen this picture in the paper, did you bring the paper down town and show it to anybody else? A. Yes, sir, I met Mr. Baker on the street.

"Q. All right, did you show the picture to Mr. Baker? A. Yes, sir, and he had noticed it the night before himself.

"Q. Mr. Baker had noticed it and already told you he had?

"[Attorney for defendant]: Object to that as incompetent, irrelevant and immaterial, leading and suggestive and hearsay.

"A. Yes, sir.

"By the court: He may state."

Counsel objected to these questions being answered on the ground that they were incompetent, irrelevant and immaterial, leading and suggestive and hearsay. The objection was overruled. Defendant argues that this was error. We have reached the same conclusion as to this point that we did concerning the testimony of the previous witness.

The next witness to testify was the bookkeeper at the bank. She identified defendant as one of the men who robbed the bank. On her direct examination the abstract shows the following:

"Says she had seen hundreds of pictures of different people. Didn't recognize any of them until she saw this man.

"Q. And so far as you know, did anybody recognize anyone before, until they recognized this man?

"[Attorney for defendant]: Object to that as incompetent, irrelevant and immaterial.

"By the Court: She may answer.

"A. Not so far as I know.

"Q. When you saw this man over here at the jail, was there another man with him? A. Yes, sir.

"Q. Was that man the other man that was in the bank? A. No.

"Q. Did anyone recognize him as being the man that was in the bank? A. Not as I know of.

"[Attorney for defendant]: Object to that as calling for a conclusion.

"By the Court: She has answered."

Defendant argues that the admission of this testimony was error. While there might be a question about its being technically correct to permit such a question, we have concluded that the questions asked did not prejudice the defendant and their admission was not reversible error.

On cross-examination of this witness the following occurred:

"Q. I asked you several times and you never saw any gun. A. I never saw any gun, but that is what he had under his sack.

"Q. You realize that this is very serious for Mr. Rafferty? A. Yes, sir.

"Q. Why do you keep saying he had a gun?

"By the Court: He did have a gun."

Defendant argues that the above remark by the judge was reversible error. The trouble with this argument is that misconduct

of the trial court was not included in the motion for a new trial. This court will not reverse a judgment for misconduct of the trial court unless the attention of the trial court was called to the matter specifically in the motion for a new trial. (See *Fairfield, Assignee, v. Dawson*, 39 Kan. 147, 17 Pac. 804, also *Brick v. Fire Insurance Co.*, 117 Kan. 44, 230 Pac. 309, also *State v. McKimson*, 119 Kan. 658, 240 Pac. 567.)

The next witness whose testimony we will notice walked into the bank while it was being held up. He identified defendant as being one of the men in the bank. In his direct examination the following occurred:

"Q. Did you see a picture of Mr. Rafferty prior to the time you saw him at the jail? A. Yes, sir.

"Q. Where did you see that picture? A. I saw it at home, I believe in the *Journal Post*, a Kansas City paper.

"Q. Did anyone call your attention to it, or did you notice it yourself? A. I noticed it myself and later on they called my attention to it.

"Q. Who called your attention to it? A. Mr. Hiatt.

"[Attorney for defendant]: Object to that as incompetent, irrelevant and immaterial.

"By the Court: No, he can say he called his attention to it. Overruled.

"Q. But you noticed the picture without anybody calling your attention to it? A. Yes, sir.

"[Attorney for defendant]: Object to that as leading and suggestive.

"By the Court: Overruled.

"Q. Now, as I understand, there is no question in your mind but that this Mr. Pete Rafferty is one of the men that was in the bank that day? A. No, sir.

"[Attorney for defendant]: Object to that as incompetent, irrelevant and immaterial and repetition.

"By the Court: Overruled."

Defendant argues that the admission of this evidence was error. Here again we have concluded that while there may be some doubt as to the admissibility of this evidence we cannot say that the defendant was prejudiced by it.

Defendant also argues here that it was error for the court to refuse to strike out the testimony of a witness for the state that she found her car which had been stolen by the bandits at a certain place where they were supposed to have abandoned it when she testified on cross-examination that she had never been to this place. We have examined this evidence, and while it is literally true that she said she found the car at this place, it is plain from the record that she meant that the car was found there. Furthermore, there

could be no possible prejudice to defendant on account of this testimony.

Defendant next complains of an irascible remark of the trial court while counsel was cross-examining a witness as to his testimony at a former trial. Here again we are met with the proposition that no charge of misconduct of the trial court was made in the motion for a new trial.

At the close of the state's evidence, which was about as it has been detailed here, defendant moved the court to discharge him, first because the information in the second count did not charge a crime against the laws of Kansas, and second because the evidence failed to prove any crime against the laws of the state. The motion was overruled, and this is urged as error. The first ground will be noticed presently. The argument to sustain the second ground is first that the evidence of the state did not show that the robbery happened in Linn county, Kansas. Defendant argues that the court cannot take judicial notice of the fact that Blue Mound is in Kansas because there is a Blue Mound in Missouri and a Blue Mound in Oklahoma. Without detailing the evidence we have concluded that there was circumstantial evidence in the record from which the jury was warranted in finding that the town where all this occurred was Blue Mound, Kan., in Linn county. Furthermore, this court and the district court can take judicial notice of the fact that Blue Mound, Kan., is in Linn county. (See *State v. Pack*, 106 Kan. 188, 186 Pac. 742; *State v. Bell*, 121 Kan. 866, 250 Pac. 281.) This court nor the trial court does not judicially know that there is a Blue Mound in Oklahoma and Missouri.

The same statement as to what the circumstantial evidence showed may be made as to the contention of defendant that the evidence did not show that the bank was a corporation, as to what the robbers got, whether gold or silver, and whether it was taken from the bank itself or somebody in the bank. This motion was properly overruled.

The defense in the case was an alibi. At an early stage in the proceedings against the defendant, counsel for defendant filed the notice required by G. S. 1935, 62-1341, with the names of the witnesses he expected to use on this plea endorsed on it.

The first witness was a woman who testified that defendant was at her home in Trenton, Mo., at 9:30 on the morning of the robbery. It was shown that Trenton was one hundred and eighty

miles from Blue Mound. On cross-examination counsel for the state was permitted to ask her whether her son had served in the penitentiary, and for what crime.

Defendant urges that the admission of this evidence was error. We have concluded that this evidence comes under the rule announced in *Ramsey v. Partridge*, 86 Kan. 398, 121 Pac. 343, also *State v. Pugh*, 75 Kan. 792, 90 Pac. 242, also *State v. Abbott*, 65 Kan. 139, 69 Pac. 160. The questions were clearly asked with the idea of affecting the credibility of the witness. Counsel complains because he was not permitted to ask this witness whether she belonged to a church. The record shows that this evidence did reach the jury and while the court said it was incompetent it was not stricken out.

The same rule applies to the testimony of the next two witnesses, a man and wife, who were asked on cross-examination about the man's having been in jail for bootlegging.

It will be remembered that counsel had served notice of the alibi plea on counsel for the state at an early date in the proceedings and that the names of witnesses he expected to use were endorsed on it.

On the morning this trial started a woman came to the courtroom with the other witnesses from Trenton, Mo., and stated that she wished to testify as to the alibi of defendant to corroborate the testimony of the other witnesses. The sheriff from the county in Missouri where she lived was in the courtroom at the time. Soon after counsel learned of this he asked permission of the court to endorse her name on the notice. The court did not rule on the request at that time. During the presentation of defendant's side of the case her testimony was offered. On the objection of the state that her name was not on the notice the evidence was refused. Defendant urges that this was error. There is a wide discretion in the trial court as to the endorsement of additional names on this alibi notice. In view of the fact that this offered testimony was cumulative we hold that it was not an abuse of discretion for the trial court to refuse to permit the endorsement of this name.

The next witness to testify for the defendant was present when the defendant and another man are claimed to have stolen the car after they fled from the bank. He testified that the defendant did not look like either one of these men. On his cross-examination the following occurred:

"If I would say this is the man, I would be badly mistaken. He don't look like it to me. It sure don't look like the one that was out to my place.

"Q. I have never talked to you, have I? A. I guess not.

"Q. You would know, if I had? A. Yes.

"By the Court: Find out why he doesn't want to be in on it. I would like to find out if he has got any reason.

"Q. Why didn't you want to be in on it? A. I don't want to be. I didn't figure I could identify him and I didn't want to have anything to do with it."

Defendant argues that the remark by the court was reversible error. Here again we are met with the proposition that misconduct of the trial court was not charged in the motion for a new trial.

During the course of the examination of defendant he complains that he was not permitted to deny that he ever drove a Chevrolet car to Blue Mound or that he ever pulled a gun on anyone in the bank or got money away from them. We have examined the record and it appears that while objections to questions on these points were sustained ample opportunity to get his denial of these things before the jury was afforded defendant.

Defendant complains here because the court would not permit him to testify that the county attorney offered to drop the bank robbery charge if he would plead guilty to plain robbery. It is difficult to see where this ruling prejudiced the defendant, since the county attorney took the stand and testified that he did make such an offer and gave as his reason that he thought such a plan would save the county money.

When the case was submitted to the jury a verdict was returned finding the defendant not guilty on the first count and guilty on the second. There is an affidavit on file in this record that while the jury was deliberating the judge entered the jury room and shortly thereafter the jury returned a verdict. The affidavit does not say how long the judge was in the room. There is no showing made as to anything that was said or any influence the judge's entering the room had upon the jury. We know the affidavit was presented to the trial court because reference is made to it on the journal entry. Defendant argues that this act of the trial judge in going into the jury room was an error for which a new trial should be granted. We realize that the place for a trial judge while a trial is going on is on the bench. (See *State v. Scholl*, 118 Kan. 629, 236 Pac. 816, also *Tawzer v. McAdam*, 134 Kan. 596, 7 P. 2d 516.) We are prevented from reviewing this conduct here, however, by the fact that the motion for a new trial did not charge misconduct of the trial court. Complaint is made by defendant of instruction No. 8, where the court instructed the jury as to weight to be given circumstantial evi-

dence in comparison with direct evidence. We see nothing wrong with this instruction. The same is true of instruction No. 9, where the court instructed the jury as to alibi evidence.

We will now consider certain defects urged by defendant as to the information. The first count charged the defendant with first-degree robbery. He was acquitted on that charge, so it goes out of the case. The second count was as follows:

"That on or about June 24, 1935, in the county of Linn and state of Kansas, one Pete Rafferty did unlawfully, willfully and feloniously enter or attempt to enter the premises of a bank or trust company or banking association, to wit: the Farmers State Bank of Blue Mound, Linn county, Kansas, with intent to hold up or rob the said bank or trust company or banking association or some person or persons therein, of money, or currency, or silver, or gold, or nickels or pennies or of anything of value, belonging to or in the custody of said bank or trust company or banking association, or from some person or persons therein."

This count alleged a violation of G. S. 1935, 21-531. The defendant attacked this count by a motion to compel the state to separately state and number the charges contained in it, that is, as to whether defendant was charged with entering the bank or attempting to enter it. The next motion was that the state be required to show definitely whom the state charged the defendant intended to rob, whether it was a bank or trust company, banking association or some other persons and that they be required to show of what the defendant intended to rob the parties. These motions were all overruled. Before trial a motion was filed to quash the second count of the information because it did not charge a crime. This motion was overruled. At the conclusion of the state's evidence the defendant filed a motion to require the state to elect upon which count of the information it relied for conviction. This motion was denied. Defendant argues that it was error to deny these motions.

As to the complaint that the information did not charge that the bank was not incorporated, that point is not good. (See *State v. Toliver*, 109 Kan. 660, 202 Pac. 99; also, *State v. Phillips*, 136 Kan. 407, 15 P. 2d 408.) As to the complaint that the information did not charge from whom the money was taken, we have examined the second count and it appears that there could be no doubt in the mind of defendant when he was called on to enter his plea that he was accused of entering the bank to rob it. As to the complaint that the second count did not charge a crime, the count charges that "the defendant entered the bank or attempted to enter premises of

the bank . . . with intent to rob . . ." the information fol-.lowed the words of the statute. This has been held sufficient. (See *State v. Goodrich*, 136 Kan. 277, 15 P. 2d 434; *State v. McGaffin*, 36 Kan. 315, 13 Pac. 560; *State v. Seely*, 65 Kan. 185, 69 Pac. 163; *State v. Buis*, 83 Kan. 273, 111 Pac. 189; *State v. Avery*, 111 Kan. 588, 207 Pac. 838; *State v. Johnson*, 116 Kan. 390, 226 Pac. 758; and *State v. Oliver*, 129 Kan. 719, 284 Pac. 357.)

There is no doubt here that whoever entered this bank did so with the intent to rob it. The defendant was not prejudiced by the information being pleaded in the disjunctive. In the consideration of this appeal the court has been guided somewhat by the provisions of G. S. 1935, 62-1718. That section forbids the reversal of judgments for technical or nonprejudicial errors.

The judgment of the trial court is affirmed.

SMITH, J. (dissenting): I find myself unable to concur in the decision of the majority in this case. The evidence admitted where the witnesses testified as to the photographs of defendant and their having told people about identifying them was incompetent and hearsay and its admission was error. The turning point in this trial was identification. It will not do to say in such a case that to permit state's witnesses to bolster up their testimony by incompetent evidence in such a manner was not prejudicial.

I think in view of the fact that the name of the alibi witness was given the county attorney in the morning and the sheriff of her county was there so that the county attorney could have inquired about her, the trial court should have permitted her name to be endorsed on the alibi plea and should have permitted her to testify. The alibi plea statute was not intended as a technical means of keeping pertinent facts away from a jury.

I realize that no charge of misconduct of the trial court was made in the motion for a new trial. However, there were so many irregularities in this record on the part of the trial court that in my opinion the whole course of conduct amounts to a denial of a fair trial to defendant. It is doubtful if the cause of the administration of justice is furthered by appellate courts noting erroneous rulings of a trial court and passing them by with the remark that they did not prejudice the rights of the defendant.

ALLEN, J., joins in this dissent.

WEDELL, J., joins in paragraph one of the dissenting opinion.