No. 35,641

The State of Kansas, *Appellee,* v. Theodore W. Howland, *Appellant.*

(138 P. 2d 424)

Opinion filed June 12, 1943.

*J. H. Jenson,* of Oakley, argued the cause for the appellant.

*E. E. Pedroja,* of Eureka, argued the cause, and *A. B. Mitchell,* attorney general, *William P. Timmerman,* assistant attorney general, *Richard A. Floyd,* county attorney, and *Martin F. Trued,* of Tribune, were on the briefs for the appellee.

The opinion of the court was delivered by

Thiele, J.: This was a criminal action in which the defendant was charged in two counts with the crime of statutory rape. He was acquitted on one count and convicted on the other, and appeals, specifying claimed errors which, in his brief, are treated under three

heads—that the trial court erred in excluding certain testimony, that the verdict was the result of bartering and exchanging votes, and that the jury was illegally permitted to separate.

The contention as to exclusion of evidence arises from the following: After the defendant had testified in his own behalf, he offered to prove by other witnesses that his reputation in the community for truth and veracity was good. The trial court ruled that character evidence must be pertinent to the offense for which the defendant was being tried and sustained an objection. The evidence was produced on the hearing of a motion for a new trial, and the question is properly before us. In support of his contention the evidence was relevant and competent and that the trial court erred in excluding it, appellant directs our attention to *State v. Scholl*, 118 Kan. 629, 236 Pac. 816, and especially to the italicized portion of the following sentence:

"Here good reputation in the community was merely a fact tending to show that defendant would not be likely to bargain for possession of a stolen steer, knowing of the theft, *and would not be likely to give* false testimony." (l. c. 634.)

In that case defendant was charged with receiving stolen property. The trial court limited the number of his witnesses to prove his general reputation for obedience to law and for truthfulness, to three, and it was the limitation on number of witnesses and not relevancy or competency of evidence which was being discussed. Apparently the state had made no objection to defendant having been permitted to show his reputation for truth and veracity. The isolated sentence on which appellant relies can hardly be said to sustain his contention the court erred in excluding the testimony offered. The question received some consideration in *State v. Frederickson*, 81 Kan. 854, 106 Pac. 1061, where a defendant, charged with manslaughter, put in issue his character for being a peaceful and law-abiding citizen. The state was permitted to controvert this showing with evidence of specific acts tending to show the contrary. The court discussed the nature of character evidence, and held, in part:

"When the defendant in a criminal action undertakes to establish good character as an element of his defense to the charge he is limited in his proof to testimony regarding his general reputation for possessing the traits involved, in the community where he resides, and the state, in rebuttal, is limited to the same kind of testimony." (Syl. ¶ 1.)

Textbooks on criminal evidence and evidence generally and other authorities state the rule to be that character evidence, to be relevant, must be confined to the particular trait involved in the nature of the offense charged, and that evidence of reputation of the accused for truth and veracity is inadmissible when not attacked by the state. See Underhill's Criminal Evidence, 4th ed., § 166, p. 288; Wharton's Criminal Evidence, 11th ed., §§ 330, 331, pp. 458, 460; 1 Wigmore on Evidence, 3d ed., § 59, p. 458; 16 C. J. 582; 32 C. J. S. 62; 20 Am. Jur. 302 *et seq.*

The proffered evidence did not bear on the trait involved in the nature of the offense charged, and the trial court committed no error in excluding it.

The next contention of the appellant is that the verdict was the result of barter and exchange of votes for acquittal on one count and for conviction on the other, to which is coupled a contention that the court orally instructed the jury. After the jury had retired to deliberate on its verdict, it returned into court, and upon being asked by the court whether it had some communication to make to the court, a number of questions were asked by the foreman and other jurors, to which the court made answer, and concerning which counsel for defendant made suggestions. No purpose will be served by here setting out in any detail the questions asked or the answers given. We have examined the record as abstracted and which seems to be almost a complete transcript. Apparently some of the jurors were in doubt whether they could convict on one count and acquit on the other, or whether they could agree on one count and disagree on the other and the manner in which they could reach a verdict. With reference to whether there could be conviction on one count and acquittal on the other, the court advised the jury that the instructions said there could. The foreman stated the jury hardly knew how to arrive at a decision like that, and he was afraid it would be illegal to vote first to commit themselves, and then to vote on each count, to which the court responded that what the jury did nobody was supposed to know. After some further questions, counsel for defendant put forward the idea the jury was suggesting a compromise verdict. Further questions evoked a statement from the court that the jury should not arrive at its verdict by any kind of chance, and that when it arrived at a verdict, it should be one they could come into court and say it was one with which they were satisfied.

Appellant places his own construction on all that was said and reaches a conclusion that the court told the jury to reach a verdict in any manner they chose, and how they did was their own, and no other person's, business. As we read the record, however, there is little justification for the contention or the conclusion or for saying the jury reached its verdict by barter or by compromise. Although the motion for a new trial alleged as one ground that the verdict of guilty on the one count was the result of compromise, so far as the abstracts disclose, on the hearing of the motion no effort was made to show by any juror that anything irregular did occur. Appellant's contention that the verdict of guilty was the result of bartering votes or for compromise is not sustained by the record. Appellant denominates all that the court said in answer to the questions propounded by the jury and in response to the suggestions of his counsel as instructions orally given, and not in writing as required by the criminal code (G. S. 1935, 62-1447), in support of which he cites *State v. Bennington,* 44 Kan. 583, 25 Pac. 91; *State v. Stoffel,* 48 Kan. 364, 29 Pac. 685; and *State v. Hathaway,* 143 Kan. 605, 56 P. 2d 89. A somewhat similar contention was made in *State v. Jones,* 137 Kan. 273, 277, 20 P. 2d 514, where the alleged oral instruction was said to be coercive. There the appellant relied on the Bennington and Stoffel cases above mentioned. After noting the holdings in those cases, this court said that a case more to the point was *State v. Potter,* 15 Kan. 302, where it was said:

"Where a juror propounds a question to the court, it may make a direct answer without reducing the same to writing, provided in so doing it does not make an independent statement of a rule of law; in other words, where the question of the juror is the full statement of the rule, and the answer is no more than an affirmation or denial, such affirmation or denial need not be reduced to writing before it is given. It may be remarked in reference to these propositions, and especially the last, that the purpose of this statute is to secure to the defendant the exact rulings of the court, in order that he may avail himself of any error in those rulings; that it was not intended to cast any unnecessary burdens upon the court, or to hamper and restrict communications between the court and jury; that it should be so construed as fairly to secure that purpose, and not made a mere weapon of technical error; that in reference to answers to questions, as there is nothing to require the questions to be reduced to writing before they are put, it would seem trifling to compel the answer to be so reduced when the answer is simply responsive, and depends for its meaning upon the unwritten question. It seems to us that, tested by this last rule, the oral statement in this case must be held not a violation of the statute, and no ground for reversal." (l. c. 320.)

In the Hathaway case, the oral instruction held to be violative of the defendant's rights was one advising the jury of the penalties attached to the offense, and in itself objectionable, and it was held that the giving of such oral instruction was in breach of the criminal code and prejudically erroneous.

In the case before us, our examination of the record does not disclose the trial court instructed the jury on any new matters, but did answer questions asked by the jurors. We think the situation disclosed is one that is controlled by the decision in *State v. Potter,* supra, and that there was no prejudicial error.

The last contention is that the jury was illegally permitted to separate. The circumstances giving rise to this complaint arise from the following: The trial of the case was had in Tribune, where it is conceded that facilities in the courthouse for keeping the jury together and in charge of an officer over extended periods of time are not entirely adequate, and that hotel or other facilities are such that it is difficult to house a jury. The record does not disclose just how the jury may have been housed, but it does disclose that the judge of the trial court, the defendant and various counsel in the case were staying at a cabin or cottage camp, near the courthouse. The cause was finally submitted to the jury for its determination during the afternoon of March 12, 1942. The record as abstracted does not show the instructions given when the cause was being tried or admonitions given the jury by the trial court at any stage of the proceeding, or under what circumstances the jurors had their evening meal, but it does disclose that they continued their deliberations during the night. Without going into all details, it appears that about three o'clock a. m. of March 13, the bailiff in charge of the jury came to the room at the cottage occupied by the trial judge and stated the foreman had sent him to say the jury had voted unanimously on one count, that some of the jurors did not wish to adhere to that vote, that some of them thought they should report to the court, and they wanted to know whether that result should be reported as a verdict. The trial judge directed the bailiff to inform the jury to continue their deliberations. As we understand defendant's contentions, he makes no objection to the matter just mentioned.

A short time later the bailiff, accompanied by the foreman of the jury and one other juror came to the judge, and the jurors requested that certain testimony be read to the jury. The judge

advised them they would have to wait until morning, but later he learned that the defendant and his counsel, as well as the reporter and county attorney, were all staying at the cabin camp, and all of them were notified and went to the courtroom and the requested testimony was then read. The record discloses that defendant's counsel was aware of the fact the bailiff and the two jurors had come from the courthouse to the judge's room, at the time the visit occurred, but it does not disclose that shortly thereafter when the jury was brought into court any objection was made, or that there was any motion to discharge the jury for misconduct or any other reason, or to have a mistrial declared.

Defendant's complaint as to what transpired is not that the judge left the courtroom, but is particularly that when the two jurors left the other ten, there was a separation of the jury, and the presumption is that it was prejudicial. In connection with this contention he argues that no doubt the jurors discussed the case with the bailiff while going to and from the judge's quarters, and that the other ten jurors discussed the case in the absence of the two. The particular occurrence was one of the grounds for the motion for a new trial, but if, on the hearing thereof, there was any evidence offered to sustain the above assumption, it is not shown in the abstracts. In support of his contention that what occurred constituted prejudicial error, appellant directs our attention to G. S. 1935, 62-1448, to a quotation from *State v. Scholl*, 118 Kan. 629, 236 Pac. 816, reciting:

"Throughout the proceeding in a criminal case the trial judge's place is on the bench. The jury room is a place of seclusion and privacy for members of the jury while they are deliberating on their verdict. The trial judge has no privilege to invade it, and all his communications with the jury ought to be in open court." (l. c. 635.)

and to the decision in *Tawzer v. McAdam*, 134 Kan. 596, 7 P. 2d 516.

The substance of G. S. 1935, 62-1448, is that after hearing the charge the jury may retire for deliberation "under the charge of an officer, sworn to keep them together in some private or convenient place, . . . and not permit any person to speak or communicate with them, nor do so himself unless by order of the court, or to ask them whether they have agreed upon their verdict, and return them into court, or when ordered by the court."

*State v. Scholl*, supra, was a criminal action. It was shown on the hearing of a motion for a new trial that the trial judge had gone to the door of the jury room on several occasions and conversed with the jury for several minutes on each occasion. The trial judge

made a statement from which this court concluded that nothing actually prejudicial occurred, and that although the conduct of the trial judge was improper, .the defendant's substantial rights were not infringed. We here note. that in *Tawzer v. McAdam*, supra, is a more complete statement of what transpired in the Scholl case, and reference to what is there said is made instead of repeating it.

*Tawzer v. McAdam*, supra, was a civil case. There it. appeared the trial judge, in the absence of counsel for the litigants, and while the jury was deliberating, went to the jury room and held a conversation with the jurors touching certain aspects of the case. The situation was fully developed by testimony offered on motion for a new trial. This court held that such actions constituted reversible error. In that case, the distinction between it and *State v. Scholl*, supra, was pointed out.

Although some analogies may be drawn from the cases relied on by appellant, the cases have nothing to do with separation· of the jury. They do make it clear that prejudicial error is not to be presumed from mere misconduct or irregularity.

One of the grounds for a motion for a new trial, as provided by the code of criminal procedure (G. S. 1935, 62-1603), reads:

"*Second.* When the jury has been separated without leave of the court after retiring to deliberate upon their verdict, or have been guilty of any misconduct tending to prevent a fair and due consideration of the case."

It has been held that under the first clause of the paragraph quoted, a separation of the jury for a necessary purpose may be authorized by the trial court. See *State v. McNeil*, 59 Kan. 599, 53 Pac. 876; also *State v. Haines*, 128 Kan. 475, 278 Pac. 767, where it was held:

"Unless prejudice is shown, a judgment sentencing the defendant to the penitentiary for life on a verdict of guilty of murder in the second degree will not be reversed because the jury was permitted to separate without guard after retiring to· deliberate on its verdict." (Syl. ¶ 7.)

As has been said, the record before us does not disclose what admonitions or directions the trial court may have given the jury, and we may make no assumptions thereon, other than that the trial was legally had.

The second clause of the paragraph of the code quoted authorizes a new trial only where the misconduct of the jury tends to prevent a fair and due consideration of the case. We are asked to assume that what occurred had that effect, but as has been pointed out,

there was no showing on the hearing of the motion for a new trial that would lead to any such conclusion.

We do not place any stamp of approval on what the bailiff and the two jurors did in leaving the courthouse and going to the judge's room. On the other hand, we cannot assume that that alone—and there is no showing to the contrary—prevented the jury from giving appellant's case the fair and due consideration to which it was entitled. We are admonished by the code that on appeals in criminal cases, judgment must be given without regard to technical errors or defects or to matters which do not affect the substantial rights of the parties. (G. S. 1935, 62-1718.)

In our judgment the matters complained of did not affect the substantial rights of the appellant, and the judgment against him is affirmed.

PARKER, J., not sitting.

WEDELL, J. (concurring): I concur in the decision of the majority but desire to state briefly my own views upon appellant's complaint concerning the separation of the jury. Certainly that was an irregularity and it is the kind of irregularity which courts should guard against carefully. No one, however, knows that better than trial judges. Certainly it is an irregularity which is properly raised on motion for a new trial. The same, however, is true of other irregularities or errors which the statute, on motion for new trial, provides may be raised on such motion. That, however, does not mean the irregularity or error necessarily entitles a defendant to a new trial.

What were the circumstances here? Did appellant, at the time, believe his rights were prejudiced? If so, he did not indicate it by objection of any kind or character. Did he, at the time, ask the trial court to declare a mistrial and to discharge the jury from further deliberation. He did not. On the contrary, he acquiesced in the same jury continuing in the exercise of its legal function of determining his innocence or guilt. From what transpired, as revealed by the record before us, it would appear appellant probably believed the jurors were at odds and that he had a good chance of being acquitted, or that there would be a hung jury, and that he would take his chances with this jury which had been separated. No litigant should be permitted to trifle with a court in that manner. Having permitted the jury to proceed without any objection what-

soever, I think appellant should be held to have waived his right to complain later, that is, in the absence of any subsequently acquired knowledge or information indicating, or tending to indicate, prejudice of some kind or character. So far as this record indicates, no information of such prejudice was subsequently discovered. Nor is there any showing here appellant believed he had been prejudiced by the separation of the jury or that any evidence tending to indicate prejudice was in any manner concealed. Under the circumstances existing in this case I think the trial court properly overruled the complaint.

Hoch, J. (dissenting): I concur in the opinion in most particulars, but I regard the irregularity shown in the matter of the separation of the jury as so serious that it cannot properly or safely be overlooked. Our statute (G. S. 1935, 62-1448) requires that the jury be kept together, under the charge of an officer of the court. In this case the bailiff left the jurors at about two or three o'clock in the morning, went to the cabin where the trial judge was sleeping, aroused him and told him that some of the jurors had asked him to ask some questions about the testimony that had been given. The bailiff returned to the courthouse and two jurors then accompanied him back to the judge's cabin where some further conversation took place, and later certain testimony was read to the whole jury. Even though there be no affirmative evidence that the defendant's rights were prejudiced by these occurrences, the irregularity is so inherently wrong that we ought not, in my opinion, disregard it. Such a practice is not only a plain violation of the statute but is fraught with possible evils most serious in character.

Smith, J. (dissenting): I find myself unable to agree with what is said in the majority opinion with reference to the colloquy that occurred at the time the jury reported and asked further instructions from the court. It would add but little to the progress of the law for me to give an extended discussion of that. I am persuaded, however, that it was a violation of orderly procedure and that the net result was to deprive the defendant of a fair trial.