No. 38,629

THE STATE OF KANSAS, *Appellee*, v. PERCY JOSEPH MYERS, *Appellant*.

(245 P. 2d 1200)

Opinion filed July 3, 1952.

A. B. *Howard*, of Kansas City, argued the cause, and *Paul L. Gray*, of Kansas City, was with him on the briefs for the appellant.

*Harold H. Harding*, county attorney, argued the cause, and *Harold R. Fatzer*, attorney general, *Paul Wilson*, assistant attorney general, *Francis J. Donnelly* and *James P. Davis*, assistant county attorneys, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: Percy Joseph Myers was charged with the crime of murder in the first degree, was convicted of murder in the second degree, and has appealed to this court. The parties will be referred to as they appeared in the lower court.

Before taking up defendant's contentions that he did not have a fair trial we summarize the facts disclosed by the abstract and counter abstract filed in this court.

On the night of August 1, 1951, defendant Myers, who is a colored man, and an acquaintance Wierzbicki, who is white, and who were acquainted with each other, attended a baseball game in Kansas City, Mo. While watching the game they drank some whiskey. After the game they went to a tavern. Wierzbicki remained in his car and Myers entered the tavern and returned with another colored man named Manley. Myers then drove the car and the three came to Kansas City, Kan., for beer. When they reached a place west of Kansas City, Kan., Myers stopped the car, pulled Manley from it, threw him to the ground, assaulted him and then returned to the car with a bloody hand and a bloody knife in his hand saying to Wierzbicki that he had fixed Manley so that he would never say anything more about a white boy and a colored boy being out together. Myers drove the car back some distance and Wierzbicki then drove it to Fourteenth and Euclid streets, in Kansas City, Mo., where Myers left the car after warning Wierzbicki to keep the matter to himself. Wierzbicki reported what had happened to the police in Kansas City, Mo. They communicated with Kansas City and Wyandotte county, Kansas, officers and Wierzbicki led them to the scene of the killing where Manley's dead body was found. In the early morning of August 2, 1951, Myers was arrested in Missouri and was returned to the Wyandotte county, Kansas, jail. While there he was visited by Lieutenant Ross of the United States navy and told Ross what had occurred. Defendant reached the Wyandotte county jail after regular breakfast hours but Ross testified he was fed before seeing the county attorney. Later Myers made a statement to the county attorney, but if it was ever reduced to writing and used, the abstracts do not so disclose.

At the trial a hearing was had in the absence of the jury concerning whether the admissions and confessions of Myers to Ross and others were freely and voluntarily made. The abstracts do not disclose fully but apparently at this hearing various witnesses testified that the defendant had not been abused or beaten in any way nor were any promises made to procure his confession. Lieutenant Ross testified about his conversations in the jail with Myers, and that he was also present when Myers orally related the details of the affair to the county attorney. Myers testified at this time, but not later in the presence of the jury, that he was arrested by police in Kansas City, Mo., and forced to sign a waiver for his return to Kansas City, Kan., and that he was taken to the Wyandotte county jail where a deputy threatened to punch him in the nose; that

Lieutenant Ross told him if he would make a statement Ross would get him a lawyer and did not do so; that the officers had "a very nasty attitude toward him" and one wanted to whip him but that Ross said no one will hit you, and he then made his statement to Ross and later to the county attorney. A deputy sheriff testified that Myers was looking at him with resentment, and he advised him not to make any attempt at violence; that Myers made no such attempt nor did any officer threaten Myers. The trial court, after hearing this testimony outside the presence of the jury, permitted the testimony of Lieutenant Ross regarding the admissions and confessions, which admissions and confessions are not detailed in the abstract, to be received in the presence of the jury.

After the state had rested, defendant moved for his discharge, which was denied. The defendant rested, and the cause was continued to the following morning. When the court again convened a juror was permitted to leave the jury box and ask the court a question and the court then stated:

"Mr. Thompson, the juror who was just at the bench speaking to the court, inquired about certain matters which were not brought out in the evidence. Now, members of the jury, the evidence is in; the case has been closed by both sides, you must determine the guilt or innocence of the defendant from the evidence that is now in the record. Possibly there are some things that have not been brought out that you might have felt should have been brought out; however, it is up to you now to decide, as I say, the guilt or innocence of this defendant from the evidence that is in the record. Jurors are not of course permitted to ask witnesses questions, because that duty is that of the attorneys. It would lead to total confusion of course if jurors were permitted to ask questions of witnesses when they are on the stand. Does that answer your question, Mr. Thompson?"

Thereafter the court instructed the jury in writing. While the instructions were being read to the jury the court reporter reduced to writing the oral answer of the court to the jury. It was not read to the jury but was attached to the instructions prior to argument and was taken to the jury room with other instructions.

After deliberation, the jury returned its verdict finding defendant guilty of murder in the second degree. His motion for a new trial was denied and he was sentenced to the penitentiary for a term of thirty years. In due time he perfected his appeal to this court, specifying as error the matters later discussed.

The defendant first contends that the trial court erred in admitting in evidence, over his objection, the oral statements and confession made by him to Lieutenant Ross. He directs attention to *The State*

*v. Kornstett,* 62 Kan. 221, 61 Pac. 805, where it was held that an extrajudicial confession will not be received in evidence unless it has been freely and voluntarily made, and that where it has been extorted by fear or induced by hope of benefit, profit or amelioration, it should be excluded, and to authorities from other jurisdictions holding to like effect. Although not clearly so stated, the argument seems to be that Lieutenant Ross made some promises to him, and because he was hungry and emotionally upset, his admissions should not have been admitted. He also directs attention to *State v. Seward,* 163 Kan. 136, 181 P. 2d 478, holding that the state has the burden of proving that a purported confession was freely and voluntarily made without threats or coercion and that the defendant has no duty to prove that the confession was not free and voluntary or that it was made under threat or coercion, but he makes no specific contention, other than as previously stated, that the rule of that case was not adhered to. In that case the trial court had refused to consider, before overruling an objection as to competency of evidence of confession, whether the confession was freely and voluntarily made without force or coercion, and it was held that it was the duty of the trial court, before admitting the confession in evidence, to hear the evidence and decide as a preliminary matter whether the confession was made freely and voluntarily without force or coercion. Reference is made to that opinion for a fuller statement and for citation of authorities in support. In the case at bar the trial court, as a preliminary matter, heard the witnesses for the state as well as the defendant, and concluded the oral confession had been voluntarily and freely made. Thereafter the testimony of the state's witnesses was repeated in the presence of the jury. Defendant did not testify to rebut the showing thus made nor did he call any other witness. The defendant has not seen fit to include the trial court's instructions to the jury, and the record as abstracted does not disclose that he objected to the instructions given, and we can only assume that the instructions given were ample to advise the jury that it should consider the truth or falsity of the confession along with the other evidence in the case. Defendant's contention there was error cannot be sustained.

The defendant's second contention is that the trial court erred in overruling his motion that he be discharged, made at the close of the state's evidence. In presenting this contention he states, in substance, that there was no evidence to sustain a finding of murder in

any of the several degrees, nor that he committed any offense on the night in question. The contention cannot be sustained. Ignoring for the moment the defendant's confession, the evidence of Wierzbicki that defendant dragged Manley from the car, assaulted him, returned with a bloody knife and blood on his hand and said "that guy is through, he will never say anything about a black and white boy again," is of itself sufficient.

Defendant's third contention is that the trial court erred in giving oral instructions to the jury contrary to G. S. 1949, 62-1447. The circumstances leading up to the giving of the so-called oral instruction have been detailed heretofore, and need not be repeated. The question of oral instructions was before the trial court on the hearing of defendant's motion for a new trial, at which time the trial court stated that the so-called oral instruction was "in truth and in fact not an instruction, it was an answer by the court to a question asked by this jury. To be super-careful I did reduce it to writing and make it a part of the instructions, the answer that I made to the juror. The very same thing in substance was contained in the oral instructions. It added nothing to the written instructions which were read by me to the jury."

Defendant relies on three of our decisions. The first is *The State v. Bennington*, 44 Kan. 583, 25 Pac. 91, where in discussing the statutory requirement as to written instructions the court, speaking through a commissioner, gave three reasons for such requirement, one, to preserve the instructions for use on appeal; two, that the jury may have the instructions, which are the law of the case, in the jury room, that they may refer to them and settle differences of opinion as to what the instructions are, and three, that the attorneys trying the cause may have the instructions so that they may, with greater facility and accuracy, apply the law to the facts in their arguments to the jury. It was held:

"It is error for a trial judge to give a portion of his instructions to the jury orally, though they are taken down by the stenographer at the time, and afterward copied and delivered to the jury, on retiring, with the other instructions." (Syl.)

The second case is *State v. Hathaway*, 143 Kan. 605, 56 P. 2d 89. In that case after the jury had been deliberating for sometime on a verdict, the foreman stated the jury was "hopelessly locked" and wished to be instructed on the various degrees of murder and

manslaughter and the trial court then gave a responsive oral instruction advising the jury the instruction would be "written down and sent to you." Later the jury reported it had reached a verdict. Defendant objected to its being received because of the oral instruction and moved that the jury be discharged. This motion was denied but the trial court refused to accept the verdict. In the meantime the oral instruction had been reduced to writing and was then handed to the jury, which was returned for further deliberation. A little later the jury returned into court with a verdict. On appeal this court directed attention to our decisions as to the importance of the provisions of the criminal code for written instructions, directed attention to *The State v. Bennington,* supra, and said:

"But can we say that the giving of this oral instruction was merely a technical error? The later reduction of the oral instruction to writing and giving it to the jury was an idle gesture which served no purpose. Following the oral instruction the jury reached their verdict, but the court declined to receive it until the belated instruction had been given to them in writing. When that was done the verdict, already reached, was received and approved.

"But the substance of the instruction itself was objectionable. This court has repeatedly held that the statutory penalty for crime is no concern of the jury. (*State v. O'Keefe,* 125 Kan. 142, 263 Pac. 1053; *State v. Reuter,* 126 Kan. 565, 566, 268 Pac. 845; *Levell v. Simpson,* 142 Kan. 892, 52 P. 2d 372.) In this case the record is open to an inference, if it does not conclusively show it, that the irrelevant instruction touching the various penalties for the different degrees of homicide served the purpose of permitting the jury to dicker on their verdict, not on the innocence or guilt of defendant, but taking into consideration the penalties, the jury reached a verdict when they had been 'hopelessly locked' until that oral instruction respecting the penalties had been given.

"It should also be kept in mind that counsel for the state and for the defendant were entitled to argue the case to the jury after all pertinent instructions had been given. If this instruction had been germane to the offense charged and to the evidence adduced, counsel should have had an opportunity to argue its relevancy to the case. And yet it would have been rather absurd to have permitted further arguments on Monday following the giving of the criticized instruction on penalties, when the case had already been submitted to the jury on Saturday and when the jury had already deliberated on it for two and a half hours that afternoon.

"Reluctant as this court is to disturb the result in this case, we find it impossible to set down anything in an opinion which would justify a decision that the giving of this instruction complained of, either in form, time, or substance, was not erroneous and prejudical. To gloss it over under the terms 'mere technical error' would open the door to further irregularities of similar character. This court feels constrained to hold that it constituted reversible error." (1. c. 608.)

The court held:

"The giving of an oral instruction to the jury on the subject of the statutory penalties for the various degrees of murder and manslaughter, after the jury had deliberated on their verdict for some time and had reported that an agreement was hopeless, was in breach of the criminal code and prejudicially erroneous." (Syl. ¶ 1.)

The third case is *State v. Stephens*, 168 Kan. 5, 209 P. 2d 924. Extensive review of this case is not necessary. After the jury had been deliberating for some time, it was brought into court and the foreman told the trial court that the jury were confused as to one count, following which a colloquy ensued between the court and the jury. This court, in holding there was error, said:

"Such conduct is tantamount to the trial judge constituting himself a member of the jury and taking part in the deliberations. The written instructions should be read to the jury prior to the argument of the counsel. (See G. S. 1935, 62-1438; *State v. Potter*, 15 Kan. 302; *State v. Stoffel*, 48 Kan. 364, 29 Pac. 685; and *State v. Howland*, 157 Kan. 11, 138 P. 2d 424.)" (l. c. 9.)

The state directs our attention to the rule first stated in *The State v. Potter*, 15, Kan. 302, and recognized in *The State v. McLafferty*, 47 Kan. 140, 27 Pac. 843; *The State v. Stoffel*, 48 Kan. 364, 29 Pac. 685; *State v. Jones*, 137 Kan. 273, 20 P. 2d 514; *State v. Finney*, 141 Kan. 12, 40 P. 2d 411; *State v. Howland*, 157 Kan. 11, 138 P. 2d 424; and *State v. Whalen*, 163 Kan. 8, 179 P. 2d 942, as being controlling. The rule of the Potter case is reflected by paragraphs of the syllabus reciting as follows:

"The statute requiring a written charge to the jury in criminal offenses is imperative, and the failure to comply with it is an error compelling a reversal." (Syl. ¶ 5.)

"It is immaterial whether the oral portion of the charge is given before the jury retire to consider of their verdict, or after they (having once retired) return to ask further instructions; and whether it is a separate instruction, or a mere explanation of a written instruction, it is an error in either case." (Syl. ¶ 7)

"The mere fact that an oral communication has passed from the court to the jury, is not of itself proof that the statute has been disregarded. But the court may properly make oral statements to the jury in reference to the form of the verdict, the manner in which the trial has been conducted, the behavior of the jury, or counsel, or parties, or any other oral statement which is not fairly and strictly a direction or instruction upon some question or rule of law involved in or applicable to the trial, or a comment upon the evidence." (Syl. ¶ 8.)

"Where a juror propounds a question to the court, it may make a direct answer, without reducing the same to writing, provided in so doing it does not make an independent statement of a rule of law. In other words, where

the question of the juror is the full statement of the rule, and the answer is no more than an affirmation or denial, such affirmation or denial need not be reduced to writing before it is given." ( Syl. ¶ 9.)

It may be observed that in the case at bar the so-called oral instruction was reduced to writing and attached to the instructions prior to the submission of the case to the jury, and that the first two purposes stated in *The State v. Bennington,* supra, were served, and actually there is no complaint made that defendant's counsel was handicapped in any way in arguing his case to the jury. The situations presented in *State v. Hathaway* and *State v. Stephens* were so different from that presented in the case at bar that we need not comment thereon.

In the instant case it is shown that following the making of the statement by the trial court, defendant's counsel, out of the hearing of the jury, stated he had a decision on oral instructions ( *State v. Hathaway* ). The trial court advised him it was not instructing on the law applicable; that it was familiar with the case and the statement made was merely an answer to the juror's question. The defendant has not seen fit to abstract the written instructions and so comparison between the oral statement and the instructions is not possible, but in view of the fact no objection was made at the trial, nor any complaint made as to the instructions in this court, we can only assume the cause was fairly submitted to the jury under proper instructions.

In our opinion the oral statement made by the trial court to the jury is not to be labelled as an instruction, but more properly an answer to a juror's question. The only sentence in the statement that might even be called in the nature of an instruction is that the jury should decide the guilt or innocence of the defendant from the evidence in the record. Because no complaint of the written instructions is made, we can only assume that such an obvious statement of the law applicable was included in the written instructions. However, taking the statement as a whole, we are of the opinion it was merely a response to the juror's question, was not an oral instruction, and was not erroneous within the purview of the decisions relied on by the defendant.

Defendant's last contention is that the trial court erred in denying his motion for a new trial. Under this contention, defendant makes no complaint that has not been discussed heretofore, further than to say the case is not governed by G. S. 1949, 62-1718. That section provides that this court must give judgment without regard to

technical errors or defects or to exceptions which do not affect the substantive rights of the parties. In view of our holding there were no technical errors or defects we need not discuss this statute, as our conclusion is not rested upon its provisions.

We conclude that the judgment of the trial court should be and it is affirmed.